**Marlin STEINMEYER, Appellant,**

v.

**BAPTIST MEMORIAL HOSPITAL, Radiology Associates, Ltd., Herbert H. Virden, M.D., Charles A. Clough, M.D., C. Keith Whittaker, M.D., Edwin E. MacGee, M.D., and Drs. Whittaker, MacGee & Clough, Inc., Respondents.**

**No. WD 34631.**

Missouri Court of Appeals, Western District.

Oct. 1, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 3, 1985.

Application to Transfer Denied March 25, 1986.

James S. Formsby, Kansas City, for appellant.

Dean Arnold, Thomas W. Wagstaff, Kansas City (Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel), for Radiology Associates and Dr. Herbert H. Virden.

Charles E. Patterson and Katherine D. Rodgers, Kansas City (Watson, Ess, Marshall & Enggas, Kansas City, of counsel), for Clough, Whittaker, MacGee and Whittaker, MacGee and Clough, Inc.

Christopher K. Kay and P. John Brady, Kansas City (Shughart, Thomson & Kilroy, Kansas City, of counsel), for Baptist Memorial Hosp.

Before MANFORD, P.J., and PRITCHARD and LOWENSTEIN, JJ.

PRITCHARD, Judge.

Plaintiff, Marlin Steinmeyer, filed suit against the various defendants alleging medical negligence, basically, in failing properly to diagnose and treat injuries to his cervical spine and spinal cord occasioned in a vehicular accident prior to the time he was admitted to Baptist Memorial Hospital on May 5, 1976, as an emergency patient, he then being in a comatose situation and a then apparent quadriplegic. Except for residuals, plaintiff recovered the use of his extremities by the time he was discharged 15 days after he was hospitalized. The verdict of the jury was for defendants, and judgment was entered thereon.

■ Appellant's first point is that the trial court erred in granting defendants, Dr. Herbert H. Virden and Radiology Associates, Ltd., leave to file joint and separate amended answers raising at the time of trial for the first time the affirmative defense of plaintiff's contributory negligence in failing to secure further medical treatment, and in refusing to submit an offered withdrawal instruction on that subject. During trial, the only place that the matter came up was the opening statement of counsel for these two defendants: "There is also an issue in this lawsuit as to whether the plaintiff was negligent in failing to return for further treatment; * * *." Later, during the course of the trial, plaintiff filed a motion to strike the joint and separate amended answers, with suggestions, and the court, after considering the same, reversed its ruling [properly because the alleged contributory negligence did not concur with defendants' alleged negligence at the time of the injury. *Sanderson v. Holland,* 39 Mo.App. 233 (1889); *Ferguson v. Ginn,* 652 S.W.2d 295, 297[1] (Mo.App. 1983). The *evidence,* however, of failure to seek further medical treatment might be admissible on the issue of mitigation of damages. *Adams v. Carlo,* 101 S.W.2d 753, 756 [2] (Mo.App.1937); *Stipp v. Tsutomi Karasawa,* 318 S.W.2d 172, 175[7] (Mo.1958).] The ruling on the court is not shown in the record, but plaintiff states that there has been no controversy that the affirmative defense of contributory negligence was taken out of the case. No instruction was given on that subject. There was evidence during the trial that plaintiff failed to return to various doctors and institutions, but no objection was lodged against that evidence so as to preserve any viable point thereon for review. In any event, the function of instructions to the jury is to tell the jury what the issues are rather than to tell them what they are not, *Nelson v. O'Leary,* 291 S.W.2d 142, 148 (Mo.1956); and it is clear under the cases that the giving or refusal of a withdrawal instruction is within the trial court's discretion. *Dunn v. St. Louis-San Francisco Railway Co.,* 621 S.W.2d 245, 252 (Mo. banc 1981). Point I is overruled.

■ Defendants' Exhibit 80 is a police report of an automobile accident involving plaintiff and his vehicle on May 30, 1979, to which plaintiff had no objection other than to portions on page 2 thereof relating to plaintiff's arrest and to alcohol being involved with results of a breathalyzer test shown. A portion of the report, as shown by a full photocopy in the legal file, recites that plaintiff "complains of neck and arm injuries" but that reference was not on Exhibit 80, it apparently having been cut off. The plaintiff, however, testified on cross-examination as to the May 30, 1979, accident that a car similar to the one in the first accident swerved into his lane causing him to swerve left off the roadway striking a light standard and a guard rail, and that

he told the officer at the scene that he had had injuries to his neck.

Upon the objection being made to the contents of page 2, the trial court stated that it intended to take off the alcohol influence report, and admitted the exhibit into evidence subject to the deletion of the City Traffic Code. Exhibit 80 was not, upon admission into evidence, apparently passed to the jury. After the jury retired, it requested certain exhibits, and in discussion between the court and counsel it was decided to send all of the exhibits, with some exceptions, to the jury room. Exhibit 80 was included, and the court asked if the removal therefrom to eliminate any reference to an arrest was satisfactory to plaintiff's counsel, who answered that it was. Exhibit 80 is a photocopy which is extremely dim and in most parts unreadable. This court can find no reference thereon to an arrest being made or a reference to a City Traffic Code. It does, however, contain a barely legible reference to "alcohol involved" with test results, which was not removed as the trial court had indicated it would do. In his Point II, plaintiff's counsel terms the omission to remove the offending material as to alcohol being involved to have been inadvertent, and so it was. Although he claims that he was unable to see whether page 2 of the exhibit, containing portions objected to, were obliterated or cut off, whatever that difficulty might have been, it was plaintiff's duty to see that nothing objectionable reached the jury which might be considered by it. The situation is akin to invited error. Cf. *Burke v. Moyer*, 621 S.W.2d 75, 82[17] (Mo. App.1981).

■ Defendants' Exhibit 80 was relevant and material to the issue of the extent of plaintiff's injuries and damages, had the jury reached that issue. See *Stanziale v. Musick*, 370 S.W.2d 261, 269 (Mo.1963). Plaintiff's contention to the contrary, Point II in its entirety is overruled.

■ Trial of this case began on October 18, 1982. Counsel, Mr. Dean Arnold, since deceased, had participated as counsel for Radiology Associates, Inc., and Dr. Herbert H. Virden, M.D., up to November 2, 1982, when all evidence had been completed and all that remained to be done was to instruct the jury and make final arguments. Mr. Arnold was not present on November 2, and counsel were advised by the court that Dr. Virden had expressed a desire to discharge his attorney and substitute another. Mr. Wagstaff requested leave to enter his appearance for Virden and Radiology, taking the position that these defendants had an absolute right to name their counsel, that they had retained him as counsel, and the matter did not involve the discretion of the court. Plaintiff objected to the substitution of counsel upon the ground that it could not help but have had a prejudicial effect, and also upon the ground that he had no opportunity to voir dire the venire persons as to their acquaintance with Mr. Wagstaff or any of the members of his 50 member firm, and asked for a mistrial which was overruled, and the substitution of counsel was permitted. Mr. Arnold was required to be in attendance during the remainder of the trial and to sit at the counsel table.

Plaintiff argues that the prejudice engendered by the substitution of Mr. Wagstaff for Mr. Arnold as counsel was this: "In view of the severe handicap, obvious pain and physical disability from which Mr. Arnold was suffering throughout the trial [Mr. Arnold did use a walker to assist his ambulation], which lasted for more than two weeks, the substitution of Mr. Wagstaff to conduct the final arguments could have at best lead [sic] the jury to speculate and conjecture as to the reason for Mr. Arnold's inability to continue the trial of the case and could have lead [sic] only to the conclusion that he was physically unable to continue thereby engendering undue sympathy for the defendants and bias and prejudice against the plaintiff." [Brackets added.] This court is unable to see that any prejudice or bias against plaintiff was engendered by these facts which would prevent the jury from fairly considering the merits of the case. It would be speculation that it did so. Besides, Mr.

Arnold's physical condition was before the jury, and counsel for plaintiff went into that matter in voir dire of the panel, "[w]hether any of you would consider Mr. Arnold's obvious disability and whether or not that might tend to create sympathy for either his client or him in this case, because he is obviously working under a handicap, and if you feel that that might have that effect or affect your judgment in this case, in any respect, I would appreciate it if you would so indicate at this time." No venire person answered in the affirmative to the inquiry, and counsel stated, "I take it that you will disregard that." It seems rather clear that Mr. Arnold was discharged at this point by Dr. Virden, who then retained other counsel for the remainder of the trial. To have denied the substitution would have created prejudice to these two defendants in that they were entitled to have representation thereafter. The trial court handled this situation well and within its discretion by permitting the substitution and requiring Mr. Arnold to remain at the counsel table to the end of the trial.

■ There was of course no opportunity for plaintiff's counsel fully to voir dire the entire panel as to their acquaintance with Mr. Wagstaff or any members of his firm. The trial court did introduce him as additional counsel of record who was entering his appearance for Dr. Virden, and inquired of the jury whether any member knew him or had ever had any business dealings with him, or had been represented by his firm, Blackwell, Sanders, Matheny, Weary & Lombardi, located at 2480 Pershing Road in Crown Center. No juror answered as to such questions, and the court stated that it took it by their silence that no juror was acquainted with either Mr. Wagstaff or any member of his firm. Under the peculiar circumstances of this case, the trial court did not abuse its discretion in conducting the voir dire of the jury. No prejudice has been shown, as by a showing that any juror was in fact acquainted with additional counsel or his firm, and that it, if so, might affect a consideration of the merits of the case, the burden of which was upon plaintiff. The trial court did what it could

to avoid declaring the drastic remedy of a mistrial. Point III, raising the issue, is overruled.

■ Plaintiff's Point IV is that the trial court erred in admitting into evidence *posed* x-rays of defendant, Dr. Virden's own cervical spine, taken of him some two days before trial. Dr. Virden, a radiologist, testified for himself as an expert witness.

It was the gist of plaintiff's medical evidence that the lateral view x-rays of his cervical spine, on May 5, 1976, were insufficient to show the extent of his injury suffered in the vehicular accident a short time before. His evidence was that the x-rays showed a variance from normal in curvature of the cervical spine, variances between the intervertebral spaces thereof [Dr. Joseph L. Fisher testified that the x-rays showed a greater space between the inferior articulating facet of the fourth cervical and the superior articulating facet of the fifth, which meant that the space "is displaced, separated abnormally, the relationship is abnormal."], and of the spinous processes [Dr. Fisher testified further that there was great space between the 4th and 5th spinous processes, the 2nd, 3rd and 4th being in normal relationship. The spinous process space between C4 and C5 is wider than normal, and in order to spread them apart, "you've got to stretch or tear these ligaments that hold these bones and the ligaments clear back to the back of the neck called ligamentum nuchae. That's a real firm, strong fibrous ligamentous attachment that holds these vertebrae in their proper alignment and proper relationship."], suggested that further x-rays, oblique and anterior-posterior views, should have then been taken to determine the true extent of his injury, and the failure to do so, and render further treatment (as by traction), constituted medical negligence.

Dr. Virden's report of his evaluation of these x-rays was that there was a slight reversal of the usual lordosis, probably positioned, with no definite evidence of fracture or dislocation, with some hypertrophic

changes about the anterior aspect of the interspace between the 5th and 6th segments. Treating physician, defendant, Dr. Clough, concurred in Dr. Virden's report and testified further that the x-rays showed a proper alignment of the first five cervical vertebrae, with no evidence of fracture, subluxation or dislocation, or evidence of a locked facet.

For defendants, neurological surgeon, Dr. Robert W. Forsythe, testified that the x-rays, Plaintiff's Exhibits 5 through 8, showed no abnormalities, with no injury to the upper five cervical vertebrae. He attributed the straight spine shown either to muscle spasm or poor positioning on the x-ray table. He failed to see anything wrong with facets, as by a unilateral lock. It was his opinion that the treatment received by plaintiff at Baptist Memorial Hospital was perfectly acceptable.

Defendants' Exhibits 87 through 92 were x-rays of Dr. Virden's cervical spine taken while he was standing erect, holding weights to pull down his shoulders, and with some in positions of extension and flexion. Dr. Virden was 61 years of age, while plaintiff was 37, and his x-rays were taken while he was supine, lying on his back, on a table in the Baptist Memorial emergency room. He had suffered some injury, while Dr. Virden had never had any injury. Thus, Exhibits 87–92 could not have been admitted on the theory that they were the result of an experiment, the conditions being wholly different from those of plaintiff. Dr. Virden testified that the x-rays would help him explain his testimony that muscle spasms and position could have affected the appearance of a spine in an x-ray; to show the curvature of a spine in a person who had not been injured; and to refute plaintiff's expert (Dr. Fisher) by showing that a normal neck can have variations in the inter-spinous spaces depending on the position of the patient at the time the x-rays were taken.

The use of posed x-rays may be subject to question, depending upon their purpose. See, analogously, the divergent cases on the subject of posed photographs in 32 C.J.S. Evidence, § 715, p. 1015, et seq.; and 29 Am.Jur.2d Evidence, § 794, p. 873.

Here, the purpose was clearly to explain Dr. Virden's testimony, and to refute plaintiff's evidence as to the inadequacy of the initial x-rays. Plaintiff stated he would have had no objection if the x-rays were taken of a stranger, and the court stated that the matter could be taken care of in cross-examination. Plaintiff did examine Dr. Virden on voir dire proceedings outside the jury's hearing, and on cross-examination in the jury's hearing, and there was opportunity given to examine the posed x-rays. Under all the circumstances, the x-rays of Dr. Virden's cervical area were explanatory of his testimony that there may be variations in the vertebrae spaces, and spinous process spaces in an uninjured, normal space, going to the issue of whether plaintiff's Exhibits 5 through 8, should have given to defendants information to indicate that further diagnostic measures were indicated and required. This was the basic issue for the jury, and it has resolved it against plaintiff. No error, in any respect, is demonstrated, and the verdict must therefore be upheld.

The judgment is affirmed.

All concur.