## Danny L. LOVE, et al., Respondents,

v.

## PARK LANE MEDICAL CENTER, Appellant.

### No. 69203.

Supreme Court of Missouri, En Banc.

Oct. 13, 1987.

Ronald R. McMillin, Jefferson City, Robert J. Harrop, William F. Ford, Jr., Kansas City, for appellant.

Michael W. Manners, Hugh H. Ryan, Independence, for respondents.

WELLIVER, Judge.

Respondents [1] filed this medical malpractice action against appellant Park Lane Medical Center for a negligently administered injection given to respondent Linda Basse by a nurse employee of the appellant. Appellant raised by answer respon-

---

1. Respondents Danny L. Love and Linda D. Love (now Basse) filed a petition for medical negligence on three counts. The trial court dismissed Count II, which plead a cause of action for damages allegedly suffered by Mrs. Basse's former husband, Danny L. Love. The trial court dismissed Count III which alleged a tortious interference with respondent's contract with respondent's physician by appellant. Hereinafter "respondent" refers only to Linda Basse.

dent's comparative fault in failing to seek appropriate and timely treatment following her discharge from the hospital. On November 21, 1985, trial resulted in a jury verdict for respondent for $69,500.00 with a percentage of fault assessed against respondent of 49%. The court entered judgment for respondent thereon for damages of $35,445.00 after computing the appropriate dollar reduction for respondent's jury assessed fault. On December 10, 1985 respondent filed a motion to amend the judgment on the ground that there was insufficient evidence to support submission of respondent's fault and for the further reason that failure to obtain medical treatment is not contributory negligence as a matter of law under the law as it existed prior to *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983). The trial court on December 20, 1985, amended the judgment for good cause stating "Plaintiff's Motion to Amend Judgment being shown...." Rule 75.01, and entered judgment for the full amount of the jury assessed damages of $69,500.00. Upon denial of appellant's motion for judgment notwithstanding the verdict or new trial, defendant appealed.

The Court of Appeals, Western District, on the basis of pre-*Gustafson* law affirmed the trial court's action in amending the judgment. Manford, J., dissenting, certified the cause to this Court pursuant to Mo. Const. art. V, § 10, as being in conflict with *Gustafson.*

We reverse and remand.

## I

We substantially adopt the statement of facts set forth in the majority opinion filed by Berrey III, J. in the Court of Appeals, Western District.

On February 10, 1985, respondent was admitted to Park Lane Medical Center for the treatment of an ear infection. During her stay she received injections of Nubaine and Vistaril for pain. On February 20, Nurse James Semadeni administered the pain injection into plaintiff's left hip. On insertion of the needle, respondent testified she felt excruciating pain and screamed for the nurse to stop or speed up the injection in order to ease the pain. Nurse Semadeni continued and completed the injection.

Respondent testified that after the shot the pain continued and prevented her from lying or sitting on it. She stated the area turned black and blue and felt like a knot where the shot had been given.

On February 21, 1985, respondent's family physician, Dr. William Whitley, was notified about respondent's difficulty. The following day, the doctor examined respondent's hip and noted a very reddened area, approximately one centimeter in diameter, with swelling in the surrounding area which is indicative of a hematoma or subsurface bruise. An electromyogram was performed and no nerve damage was detected. Dr. Whitley did not prescribe any medication for the hip. Respondent testified Dr. Whitley did not tell her to come back for a check-up.

Approximately a week after respondent's discharge from the hospital, the area on respondent's hip turned black and covered approximately a four inch area. Respondent believed this to be a sign that it was healing; respondent's former husband, Danny Love, testified that he continually advised her to see a doctor about it but respondent denied this stating her husband agreed the hematoma was in the process of healing. Danny Love suggested she "just confront Dr. Whitley about it." He further stated that "if it was me I would have taken care of it myself and went to the doctor." Respondent visited Dr. Whitley weekly for her children's allergy shots but she did not mention, nor did Dr. Whitley inquire about, the condition of her hip. During this time, the blackened area, now in a scab like form, began chipping off. Respondent testified that she applied heat and ice on the area up until a few days prior to visiting Dr. Whitley again.

Finally, on April 12, 1985, approximately seven weeks after her discharge from the hospital, respondent asked Dr. Whitley to examine her hip; her request was prompted by increased pain and drainage of the infected area. Upon examination, Dr. Whitley found the area had deteriorated into a necrotic ulcer which was surrounded

by a gap in the skin and was very red and swollen. Treatment of this condition included whirlpool baths to release the core of the lesion, and two subsequent surgeries for debridement of the dead tissue and to close the ulcer.

Respondent called two experts to testify. Helen Connors, assistant professor of nursing at the University of Kansas School of Nursing, testified that an improperly administered injection can result in damage to the tissue and gluteal abscess. She stated the pain killer Vistaril should be injected into the muscle and never subcutaneously. Connors opined that Nurse Semandeni failed to meet acceptable standards of practice in administering the pain injection. Respondent also called Barbara Berry, assistant director of nursing at University of Kansas Medical Center, who testified that just because a patient complains of pain upon injection and a hematoma develops does not necessarily mean the injection was improper. Ms. Berry did state that if a patient screamed in pain during an injection, prior to release of the medication, she would stop the injection. Respondent's other expert, Dr. James VanBiber, also testified that plaintiff's injury was caused by an "improperly given injection." He stated an injection of Vistaril in the subcutaneous tissue would likely cause irritation and pain, and would result in the breakdown of subcutaneous tissue. He also stated that hematoma could cause a necrotic ulcer and not all hematomas are the result of negligent conduct, but believed that respondent's injury was the result of negligent conduct.

Dr. Whitley testified on behalf of the appellant. He stated he advised respondent on discharge from the hospital to contact him if any problems arose. He opined that had he been made aware of plaintiff's on-going difficulties, respondent's subsequent surgeries could have been avoided.

## II

The theory of submission of the case is reflected in the following instructions appearing in the legal file.

### Instruction No. 6

In your verdict you must assess a percentage of fault to defendant, Park Lane Medical Center, whether or not plaintiff was partly at fault if you believe:

First, nurse James Semadeni injected the medication of Vistaril and Nubaine into plaintiff's subcutaneous tissue, and

Second, James Semadeni was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

The term "negligent" or "negligence", as used in this instruction, means the failure to use the degree of skill and learning ordinarily used under the same or similar circumstances by the members of nurse James Semadeni's profession.

MAI 21.01, modified, 11.06, modified

*Gustafson v. Benda,* 661 S.W.2d 11

(Mo. *en banc.* 1983).

MAI 21.01 (1965 New)

Modified in Accordance with

*Yoos v. Jewish Hosp. of St. Louis,* 645 S.W.2d 177 (Mo.App.1982)

Submitted by plaintiff and defendant

### Instruction No. 8

You must assess a percentage of fault to plaintiff if you believe:

First, plaintiff did not consult a doctor for the condition of her hip until approximately seven (7) weeks after her discharge from the hospital, and

Second, plaintiff was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

MAI 32.01(1) (1978 New)

Modified in Accordance with

*Gustafson v. Benda,* 661 S.W.2d 11

(Mo. banc 1983).

MAI 11.02
Submitted by defendant

### Instruction No. 9

If you assess a percentage of fault to defendant, then, disregarding any fault on the part of plaintiff, you must determine the total amount of plaintiff's damages to be such sum as will fairly and justly compensate plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future as a direct result of the conduct of defendant as submitted in Instruction No. 6. You must state such total amount of plaintiff's damages in your verdict.

In determining the total amount of plaintiff's damages you must not reduce such damages by any percentage of fault you may assess to plaintiff. The court will compute plaintiff's recovery by reducing the amount you find as plaintiff's total damages by any percentage of fault you assess to plaintiff.

MAI 4.01, modified

*Gustafson v. Benda*, 661 S.W.2d 11 (Mo. *en banc.* 1983).

Submitted by Plaintiff

It appears that the instructions submitted by both appellant and respondent contemplated trial of comparative fault as mandated by *Gustafson.*

### III

Rule 75.01 states "[t]he trial court retains control over judgments during the thirty-day period, after entry of the judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." The trial court has inherent control over its judgments. *See State ex rel. Stoffer v. Moore,* 628 S.W.2d 637, 644 (Mo. banc 1982); J. Devine, Missouri Civil Pleading

and Practice § 35–2 (1986). *See also Rustici v. Weidemeyer,* 673 S.W.2d 762 (Mo. banc 1984) (trial court can *sua sponte* grant a directed verdict in favor of a party). The trial court retains inherent power to amend the judgment limited only by finding a good cause.

### IV

The sole remaining issue raised by the appeal and certified to us by the court of appeals is whether the trial judge in this instance had good cause for amending the judgment, or, more precisely put, whether the trial judge could apply and rely on pre-*Gustafson* law of contributory negligence as a basis for making the amendment.[2]

Under the doctrine of contributory negligence, as used in Missouri prior to the adoption of comparative fault, evidence of plaintiff's failure to seek medical treatment went to mitigation of damages but was unavailable to be used as a defense because plaintiff's negligence did not concur with defendant's alleged negligence at the time of the injury and failure to seek medical treatment did not bar a plaintiff's recovery. *Sanderson v. Holland,* 39 Mo.App. 233, 239 (1889); *Steinmeyer v. Baptist Memorial Hospital,* 701 S.W.2d 471, 473 (Mo. App.1985). This Court did recognize that plaintiff had a duty to exercise reasonable care to seek medical treatment and to mitigate damages. *Boggess v. Metropolitan St. Louis Ry. Co.,* 118 Mo. 328, 23 S.W. 159 (1893); *Fullerton v. Fordyce,* 144 Mo. 519, 44 S.W. 1053 (1897); *Liddle v. Collins Construction Co.,* 283 S.W.2d 474 (Mo. 1955); *Brown v. Kroger Co.,* 358 S.W.2d 429 (Mo.App.1962).

In *Gustafson,* we adopted the system of pure comparative fault reflected in the Uniform Comparative Fault Act (UCFA) for trial of tort actions. We stated that insofar as possible we would follow the U.C. F.A. and by footnote 10 excepted the matter of handling settlements which was

---

**2.** In *Lee v. Mirbaha,* 722 S.W.2d 80 (Mo. banc 1986), the issue raised by the plaintiff was that the trial court erred in submitting a comparative fault instruction on plaintiff's failure to exercise his fingers after surgery, which contributed to his damages. The court did not reach

the issue of whether mitigation of damages is fault, thus subject to a comparative fault instruction, because the jury found a general verdict for the defendant, and was not required to apportion fault.

dealt with by § 537.060, RSMo 1978, then recently adopted following *Missouri Pacific R.R. v. Whitehead & Kales*, 566 S.W.2d 466 (Mo. banc 1978). In the following sentence, we also exempted joint and several tort liability as it then existed in Missouri.[3] We clearly stated that "we supplant[ed] the doctrines of contributory negligence, last clear chance, and humanitarian negligence with a comprehensive system of comparative fault ..." *Gustafson*, 661 S.W.2d at 16.

In *Gustafson*, we said that we were adopting "a comprehensive system of comparative fault for the trial of *tort* cases ..." *Gustafson*, 661 S.W.2d at 15. That which we did could not have been more dramatically described than by Billings, J. concurring:

> Because I believe pure comparative fault is more equitable and just than the ancient and harsh, all or nothing, rule of contributory negligence, and the mathematical gymnastics employed in last clear chance and humanitarian cases, I concur.
>
> Historically, contributory negligence, last clear chance, and humanitarian negligence, were born by judicial decisions. By judicial decision we bury them.

*Gustafson*, 661 S.W.2d at 28 (Billings, J., concurring).

> Fault is defined in the UCFA to include: acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, *and unreasonable failure to avoid an injury or to mitigate damages*. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

UCFA § 1(b), *Gustafson*, 661 S.W.2d at 18 (emphasis added). "The term also includes ... unreasonable failure to avoid an injury or to mitigate damages." Commissioner's Comment (c), UCFA § 1, *Gustafson*, 661 S.W.2d at 20.

In *Gustafson*, we recognized that there existed both "comparative fault" and "comparative negligence" and recognized that five years earlier in *Whitehead & Kales*, this Court had committed us "in the direction of comparative fault." *Gustafson*, 661 S.W.2d at 14. We also recognized that "[o]ur five years of experience with a limited application of comparative fault fully demonstrates that fairness and justice can best be achieved through a broader application of that doctrine." *Gustafson*, 661 S.W.2d at 15.

▪ Fault is not to be confused with negligence as it existed prior to *Gustafson*. Negligence is but one type of fault; fault also includes avoidable consequences, including mitigation of damages. Wade, Uniform Comparative Fault Act, 14 The Forum, 379, 381, 389 (1979).

> The Act is a comparative fault act; it is not confined to negligence actions. From the standpoint of the defendant, it includes negligence, "in any measure," thus encompassing negligence per se, whether established by statute or court decision, recklessness by whatever name it is given in a particular state, strict liability in tort (for abnormally dangerous activities or for products liability) and breach of warranty.... From the standpoint of fault on the part of the plaintiff, it of course includes contributory negligence. It covers assumption of risk to the extent that it bars an otherwise valid action on the ground of plaintiff's fault. Misuse of a product is also included if there would have been a valid cause of action in the absence of the misuse. Avoidable consequences is also specifically included.

*Id.* at 381.

> The Act provides that "fault" includes "unreasonable failure to avoid injury or to mitigate damages" (§ 1(b)). This

---

**3.** The handling of joint and several liability has been modified by H.R. 700 § 41, 84th Gen. Assembly, 1st Sess. (1987); 1987 Mo.Legis.Serv. No. 1 (Vernon) (to be renumbered § 537.067, RSMo 1987).

should be read together with another sentence providing that plaintiff's contributory fault proportionately diminishes the amount awarded as damages "for an injury attributable to the claimant's contributory fault" (§ 1(a)). The Act therefore covers the concept of avoidable consequences and provides that for a particular injury that could have been avoided by the plaintiff or for the diminution of damages that he could have effected by the exercise of reasonable care, the amount will be diminished proportionately according to the comparative fault of the parties.

Wade, Products Liability and Plaintiff's Fault—The Uniform Comparative Fault Act, 29 Mercer L.Rev. 373, 385–86 (1978). Mitigation of damages is expressly included in the UCFA. Expressing mitigation of damages as a percentage of fault reducing plaintiff's damages is the proper method for fairly accounting for the failure to mitigate as was done in the instructions.

The cause having been properly instructed and submitted and the jury verdict being fully supported by the evidence, the trial judge was without good cause for amending the original judgment. The cause is reversed and remanded to the trial court for vacation of the amended judgment and re-entry of the original judgment in accordance with this opinion.[4]

Reversed and remanded with directions.

DONNELLY, J. concurs.

ROBERTSON, J., concurs in result.

HIGGINS, J., concurs in separate opinion filed.

BLACKMAR, J., concurs and concurs in separate concurring opinion of HIGGINS, J.

BILLINGS, C.J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of BILLINGS, C.J.

HIGGINS, Judge, concurring.

I agree with the order of reversal and remand for re-entry of the original judgment. I do so because it appears that the parties chose to submit this medical malpractice case on comparative fault instructions which directed the jury to assess the percentages of fault, if any, between plaintiff and defendant. The jury performed its function in accordance with that submission, and the original judgment perfected the process.

The discretion exercised by the trial court in this case is limited to rulings supported by a showing of good cause. Rule 75.01. In the circumstances of this case the unspecified reason for the trial court's ruling does not, in my opinion, rise to good cause as envisioned by the rule.

BILLINGS, Chief Justice, dissenting.

The principal opinion seeks to expand what the Court held in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), by quoting and adopting "comments" and the writings of Professor Wade. As our Brother Welliver well knows it was only after "insofar as possible" was added to the opinion, thereby limiting the scope of comparative fault and leaving it to a case by case basis, that this writer joined the opinion.

The principal opinion uses contributory negligence to reduce plaintiffs' recovery. Under *Gustafson* this is not authorized and is nothing more or less than "bootstrapping" to adopt by opinion the comment and utterings of others.

I dissent and vote to overrule *Gustafson*.

**4.** It should be noted that the holding herein is totally compatible with H.B. 700, § 36, 84th Gen. Assembly, 1st Sess. (1987) relating to "mitigation of damages" in product liability cases. *See* 1987 Mo.Legis.Serv. No. 1 (Vernon) (to be renumbered § 537.067, RSMo 1987).