Randolph WILSON, Appellant/Cross–Respondent,

v.

CONSOLIDATED RAIL CORPORATION, Respondent/Cross–Appellant.

Nos. 62967, 63020.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 22, 1994.

Motion for Rehearing and Transfer
Denied April 19, 1994.

Application to Transfer Denied
May 26, 1994.

Roger C. Denton, St. Louis, for appellant.

Leslie Offergeld, Thomas E. Jones, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

This appeal arises from an action under the Federal Employer's Liability Act (FELA). Randolph Wilson brought an action against Consolidated Rail Corporation (Conrail) for injuries he sustained to his lower back.

On November 2, 1989, Wilson, a Conrail employee, was assisting a crew of employees in unloading stone from railroad cars. The stone was emptied from the cars onto the railroad track and tamped down to help maintain the track. The stone was emptied from one of two doors on opposite sides of the car. To open one of these doors, Wilson would place a bar approximately three feet long into two holes in the door and jerk the bar to pry the door open. Wilson had trouble with the very first car door. It was difficult to open, and Wilson had to use a sledge hammer to loosen the door. At that time, Wilson felt some pain in his back, but the pain was not enough to discontinue working.

On the last car that the crew emptied that day, Wilson could not open the door. He and several other employees, including his foreman, Brian Lane, and his supervisor, Jerry White, tried to open the door without success. There were other cars containing stone on the track, but Lane wanted to empty the car which was proving so difficult to open. They continued their futile efforts with this door for twenty minutes. During this time, Wilson felt a hot twinge and numbness in his back going down to his right leg after jerking on the door. Eventually they abandoned the door and emptied the car by another means.

Wilson brought an FELA action against Conrail for an alleged back injury. At trial, Dr. Marvin Gold and Dr. David Schreiber testified in Wilson's behalf regarding the extent and nature of this injury. Dr. Gold testified by deposition that Wilson's back problems were consistent with a herniated disc. He placed Wilson on a permanent fifteen pound lifting restriction and concluded

that these difficulties resulted from the incident with the railroad car door. Dr. Schreiber believed that Wilson suffered from disc abnormalities, muscle and ligament damage, and nerve damage. He also stated that Wilson was incapable of returning to the heavy work he once did for Conrail. He, too, concluded that the incident in question had caused Wilson's injuries.

Dr. Leslie Szalay and Dr. Patrick Hogan testified by deposition on Conrail's behalf. Several months prior to the alleged accident, Dr. Szalay had treated Wilson for low back pain. Dr. Szalay only saw Wilson twice after the accident. He prescribed medication for Wilson's back pain, but after the second visit, Wilson never returned. Dr. Szalay stated that the x-rays he examined were unrevealing. In his deposition, Dr. Hogan stated that he examined Wilson and reviewed his medical history. He said that he found Wilson's reflexes to be normal, indicating that Wilson's nerves were not being impinged or interrupted by any disc abnormalities. He said that he could find no abnormality other than arthritis. He concluded that Wilson was able to return to work without restriction.

At the close of evidence, Conrail moved for a directed verdict which the trial court denied. Conrail offered and the court gave Instructions 9 and 10, Not–In–MAI instructions relating respectively to present cash value and to mitigation of damages. After instruction and final argument, the jury returned with a verdict of $100,000 in favor of the plaintiff. Wilson moved for a new trial, and Conrail requested that the court enter a judgment notwithstanding the verdict. Both motions were denied, and both parties appealed. Those appeals were consolidated into this action.

## I

■■ Conrail alleges that the trial court erred in failing to grant Conrail's motion for judgment notwithstanding the verdict because Wilson failed to make a submissible case. In determining whether the plaintiff made a submissible FELA case, we view the evidence in a light most favorable to the jury's verdict and afford the prevailing party

the benefit of all reasonable inferences that may be drawn from the evidence. *Qualls v. St. Louis Southwestern Ry. Co.,* 799 S.W.2d 84, 85 (Mo. banc 1990). The case should be submitted to the jury if there is any evidence to support the employer's negligence. *Zibung v. Union Pacific R. Co.,* 776 S.W.2d 4, 5 (Mo. banc 1989). Evidence of the employer's negligence can be slight or minimal. *Id.* at 5.

The main thrust of Conrail's argument is twofold. First, Wilson premised Conrail's negligence on its failure to provide him with reasonably safe equipment because the railroad car door was so difficult to open. Conrail maintains that Wilson failed to submit any evidence on what caused the door to be so hard to open. Wilson suggested a number of causes—rust, dirt, misplaced stones—but all of these causes were mere speculation. As such, Conrail argues that Wilson failed to prove that the door in question was not reasonably safe. Second, Conrail asserts that Wilson did not show Conrail knew or should have known about any alleged defect in the door. Therefore, Wilson did not prove that his injury was linked to any negligence on the part of Conrail.

■■ In an FELA action, the employee must show by direct or circumstantial evidence that (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition which caused the employee's injury; or (2) at least one of such persons had actual knowledge of the presence of the unsafe condition before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care. *Brown v. Cedar Rapids And Iowa City Ry. Co.,* 650 F.2d 159, 161 (8th Cir.1981).

In the present instance, Conrail confuses the proof necessary to establish that Conrail was responsible for the unsafe condition with the proof necessary to establish that Conrail knew of the unsafe condition. Wilson did not prove what caused the door to be defective. And, he did not attempt to prove that Conrail was responsible for the defect that made the door so difficult to open. But, he did prove

that the door was, in fact, unreasonably difficult to open. Wilson also showed that his foreman, Brian Lane, knew how hard it was to open the door and still persisted in trying.

This is the basis of Conrail's liability. Although not necessarily responsible for the condition which made the door defective, there was abundant evidence that Conrail had actual knowledge of this defect before Wilson's injury. Conrail did not try to alleviate this defect once it was discovered. Instead, Conrail, through its foreman Lane, insisted on attempting to force the door. As a result, Wilson injured his back. This was sufficient to support the jury's verdict. Conrail's appeal is denied.

## II

■ In his appeal, Wilson alleges that the trial court erred in three instances: by giving Instruction 10 on the mitigation of damages, by giving Instruction 9 defining present value, and by allowing Dr. Hogan's deposition into evidence. We address first the allegation that the trial court erred by allowing Dr. Hogan's deposition to be read into evidence.

Wilson argues that there was no foundation for admission of the deposition because Conrail made no showing of Dr. Hogan's unavailability. The issue is governed by Rule 57.07(a)(3)(C) which provides:

> (3) The deposition of any witness who is not present in court may be used by any party for any purpose if the court finds: . . . (C) that the witness is a judge of a court of record, a practicing attorney or physician *and engaged in the discharge of his official or professional duty at the time of trial* . . . . (emphasis added).

The court's finding may be based upon testimony within the deposition itself. Rule 57.07; *Null v. Gray*, 534 S.W.2d 823, 825 (Mo. App.1976).

In the present instance, the court did base its ruling upon testimony within the deposition. But, the ruling was based solely on the fact that the witness was a practicing physician. In answer to Wilson's objection at trial, the court stated:

Well, with regard to the objection on the foundation, while it seems to be correct, as far as this deposition goes, the foundation was not expressed.

Mr. Jones, I'll overrule the objection based on the inference that I draw from the deposition and the vitae that he is a doctor in active practice. Accordingly, I'll overrule the objection.

The inference the trial court drew here would require us to treat the italicized portion of the rule as surplusage. *Null* at 826. Any practicing physician would be deemed unavailable regardless of the reason for his or her failure to testify. *Id.* However, the rule clearly requires a finding not only that the witness is a practicing physician but also that he or she is unavailable to testify because of professional duties. *Id.* Here, the trial court made no such finding and, therefore, it erred in allowing Dr. Hogan's deposition into evidence.

Since the trial court erred in allowing Dr. Hogan's deposition into evidence, we must consider whether this error materially affected the merits of the action. *Nachtweih v. Maravilla*, 861 S.W.2d 164 (Mo.App.1993).

Conrail offered the depositions of Dr. Leslie Szalay and Dr. Patrick Hogan into evidence. Some months prior to the alleged accident, Dr. Szalay treated Wilson for low back pain. Dr. Szalay only saw Wilson twice after his accident. He prescribed medication for Wilson's back pain, but after the second visit, Wilson never returned. Dr. Szalay stated that the x-rays he examined were unrevealing. Essentially this was the sum of his testimony.

In his deposition, Dr. Hogan stated that he examined Wilson and reviewed his medical history. He said that he found Wilson's reflexes to be normal, indicating that Wilson's nerves were not being impinged or interrupted by any abnormalities. He found no muscle atrophy. He said that he could find no abnormality, other than arthritis, which would explain Wilson's complaints of low back pain. He believed that Wilson was not suffering from a disc bulge, and he concluded that Wilson was able to return to work without restriction.

Dr. Hogan's deposition was the only evidence directly contradicting Wilson's medical experts. As such, we simply cannot find that the admission of Dr. Hogan's deposition did not materially affect the jury's determination of causation and damages. On this point, we must reverse the judgment.

### III

■ Wilson also complains about the court's instruction to the jury on mitigation of damages. The instruction was not a Missouri Approved Instruction. First, Wilson argues that Conrail was not entitled to an instruction on mitigation of damages because MAI 8.02 is the only permissible damages instruction in an FELA action in Missouri. Alternatively, Wilson maintains that even if a mitigation instruction was permissible, the form of this particular instruction was improper.

■ We reject Wilson's argument that MAI 8.02 precludes all other damages instructions. The propriety of jury instructions concerning the measure of damages in an FELA action is an issue of substance determined by federal law. *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985). Accordingly, a party's contention that it is entitled to a jury instruction cannot be dismissed on the ground that such an instruction is not found in the Missouri Approved Instructions. *Dickerson*, 470 U.S. at 411, 105 S.Ct. at 1348. Instead, an FELA defendant is entitled to an instruction on the mitigation of damages if there is evidence in the record to support a finding that the plaintiff failed to mitigate his damages. *Trejo v. Denver & Rio Grande Western R.R. Co.*, 568 F.2d 181, 184 (10th Cir.1977).

In *Dickerson* the United States Supreme Court held that in an FELA action a state court should not reject a party's proffered instruction simply because state law has not approved the instruction. However, *Dickerson* does not allow a party to ignore state guidelines regarding the form of unapproved instructions. *Holley v. Missouri Pacific R.R. Co.*, 867 S.W.2d 610, 615 (Mo.App.1993). Rule 70.02(e) contains specific guidelines for

submitting not-in-MAI instructions in situations where a party maintains that there is no applicable MAI instruction. *Id.* Those guidelines require that the tendered instruction be simple, brief, concise and free from argument. Rule 70.02(e); *Holley* at 615. Additionally, instructions which submit only abstract statements of law requiring no findings by the jury are improper. *Holley* at 615–16.

The instruction in question reads as follows:

An injured party is under a legal obligation to mitigate his damages, that is, to minimize the economic loss resulting from his injury, by resuming gainful employment as soon as such can reasonably be done.

This instruction requires no findings of fact. It is an abstract statement of law that does not instruct the jury in any way on how it is to use this information. The form of the instruction is inconsistent with the MAI concept of instructing juries to find or to reject the determinative ultimate facts. *Mobley v. Webster Elec. Co–Op.*, 859 S.W.2d 923, 933 (Mo.App.1993).

In an FELA case, failure to mitigate damages, sometimes called the doctrine of avoidable consequences, has the same effect as a plaintiff's contributory negligence. *Conley v. Burlington Northern Railroad Co.*, 712 S.W.2d 381, 383 (Mo.App.1986). Under Missouri comparative fault law, mitigation of damages is an affirmative defense providing for a reduction of damages and is properly submitted to the jury under MAI 37.02. *Love v. Parklane Medical Center*, 737 S.W.2d 720, 725 (Mo. banc 1987); *Young v. Kansas City Power and Light Co.*, 773 S.W.2d 120, 125–26 (Mo.App.1989). Of course, in an FELA case, where the jury rather than the judge is responsible for the reduction of the damage award in proportion to the plaintiff's contribution to his own damages, the language of MAI 37.02 directing the jury to assess a percentage of fault against the plaintiff would be inappropriate. Nor would MAI 32.07, which submits a plaintiff's contributory

negligence in an FELA case, be appropriate.[1] Failure to mitigate damages, although it may constitute fault, is not necessarily negligence. *Love* at 724. Moreover, such fault does not contribute to the causation of plaintiff's injury but may be a factor contributing to the extent of his damages. The issue of failure to mitigate damages, assuming the existence of evidence to support such an issue, might more appropriately be submitted by an affirmative converse instruction directed to certain pecuniary damages.

The court erred in giving Instruction 10.

## IV

■■■ In his final point on appeal, Wilson argues that the trial court erred in giving the jury Instruction 9, defining present value. Wilson did not object to this instruction at trial. Supreme Court Rule 70.03 gives a party the right not to object to an instructional error at trial as long as the specific objection is raised in the motion for new trial.[2] *Holtmeier v. Dayani*, 862 S.W.2d 391, 396 (Mo.App.1993). Wilson did specifically object to this instruction in his motion for new trial and, therefore, preserved the matter for review. *Id.* at 396.

Instruction 9 is as follows:

Any award for future pecuniary loss must be only for its present cash value.

Present cash value is the present sum of money which, together with the investment return thereon when invested so as to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the time, in the amounts, and for the period that you find such future benefits would have been received.

The present cash value will, of course, be less than the amount you find to be the loss of such future benefits.

In an FELA action, federal law mandates that the jury be instructed to discount any award for future lost earnings to its present value. *Dickerson*, 470 U.S. at 411, 105 S.Ct. at 1348. Wilson does not dispute this. Instead, Wilson points out that federal law does not mandate any one particular method for determining present value. *See Dickerson*, 470 U.S. at 412, 105 S.Ct. at 1348–49; *Anglim v. Missouri Pacific R. Co.*, 832 S.W.2d 298, 308 (Mo. banc 1992). Citing *Anglim*, Wilson argues that the proper method for determining present value in Missouri is relegated to the jury. Therefore, his argument continues, MAI 8.02, as revised in 1991 to include the sentence "any award of future pecuniary damages must be included at present value," is the exclusive means of instructing the jury regarding present value. We agree.

When an instruction applicable to an issue has been approved by the Supreme Court, it must be given to the exclusion of any other instruction on the same subject. Rule 70.-02(b); *City of Kansas City v. Habelitz*, 857 S.W.2d 299, 303 (Mo.App.1993). The 1991 revision of MAI 8.02 thus becomes the exclusive instruction in an FELA case concerning the issue of present value. It conforms to the philosophy of MAI instructions in that it states only the ultimate fact and leaves details and specifics to argument of counsel. *Koehler v. Burlington Northern, Inc.*, 573 S.W.2d 938, 944 (Mo.App.1978). We note that in adopting the revised version of MAI 8.02 the Supreme Court did not deem it necessary to include a definition of "present value" or to designate a procedure by which it should be computed.

We need not address Wilson's argument attacking the form and content of Instruction 9. Because Instruction 8, MAI 8.02, is the exclusive approved instruction pertaining to

---

**1.** MAI 32.07 reads:
You must find plaintiff contributorily negligent if you believe:
First, plaintiff (*characterize the act of negligence, such as, "failed to keep a lookout for oncoming trains"*), and
Second, plaintiff was thereby negligent, and
Third, such negligence of plaintiff directly contributed to cause his injury.

**2.** Rule 70.03, as amended, reads in part: "No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." However, this action was tried and appealed before the amendments in Rule 70.03 became effective.

present value, the trial court erred in giving an additional instruction on the same subject.

## V

Wilson asks that we remand this case for a new trial on damages only. The issue of damages may be retried alone if the issue is clearly severable from and not so blended or interwoven with the other issues in the case that the defending party is prejudiced by retrial of the single issue. *Phillips v. Lively,* 708 S.W.2d 369, 373 (Mo.App.1986). However, in FELA and other comparative fault cases, the interrelationship of fault and damages is almost always present. *Id.*

Accordingly, the judgment of the trial court is reversed and the cause is remanded for a new trial on all issues. Costs assessed against defendant.

GRIMM, P.J., and AHRENS, J., concur.