Jack **SKINNER**, Appellant,

v.

**LEGGETT & PLATT, INC.,**
**Respondent.**

**No. SD 29869.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 20, 2010.

Application for Transfer Denied Dec. 21, 2010.

---

R. Deryl Edwards, Jr., Joplin, MO, for Appellant.

Ronald G. Sparlin, Joplin, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Jack Skinner ("Appellant") filed a lawsuit against Leggett & Platt, Inc. ("Respondent") seeking damages for personal injuries he allegedly sustained when he fell on stairs on Respondent's property. The jury returned a verdict for Respondent. This appeal followed. We affirm the judgment of the trial court.

## Factual History

On July 7, 1997, Appellant's employer, Midwestern Telephone, sent him to Respondent's facility in Carthage, Missouri, to install a paging system. Upon arrival, Appellant proceeded to the safety manager's office and was given a "safety tour" of the plant. Before Appellant began his work, he was requested to move his vehicle because it was blocking the dock area. As Appellant left the safety manager's office, he walked down a hallway, opened a door, and started down a set of stairs without handrails. Appellant fell and alleged as a result of the fall, he sustained physical and psychological injuries.

Appellant alleged Respondent was negligent *per se* for the lack of handrails required by the Carthage city code, which had adopted the "Building Officials Building Code/1965 ('BOCA')," and for violating the Occupational Safety & Health Administration ("OSHA") workplace regulations "29 C.F.R. § 1910.21–24 and 29 C.F.R. § 1926." Respondent denied any knowledge of the incident until a lawsuit was filed in July 2002. Respondent asserted as affirmative defenses Appellant's failure to mitigate damages and his comparative fault in failing to follow his treating physicians' instructions.

Substantial evidence was presented concerning Appellant's medical condition. Dr. Christopher Andrew ("Dr. Andrew") treated Appellant approximately two months after his accident and testified as a part of Appellant's case. He is a neurologist in Joplin, Missouri. He described the diagnostic testing and treatment he recommended in the early stages of Appellant's care. He testified Appellant failed to follow medical advice by declining to complete an electroencephalogram ("EEG") test of his brain and refusing various pre-

scription medications. Dr. Andrew acknowledged that Appellant did not receive the intended benefit and improvement anticipated because he failed to take the prescribed medication. He also opined that permitting Appellant's multiple symptoms to go untreated could lead to psychiatric disorders such as somatoform disorders or conversion disorders. Dr. Andrew explained, "Well, it kind of ties our hands, there's not a whole lot I can do if a patient's not going to try to buy into his healthcare and try to improve his own healthcare."

Appellant offered the testimony of Dr. Lester Zackler ("Dr. Zackler"), a psychiatrist from Sherman Oaks, California, specializing in consultation liaison psychiatry. Dr. Zackler was hired by Appellant to assess his alleged brain injury and explain the impairment from that injury. During cross-examination, Dr. Zackler agreed that Appellant had failed to take medication prescribed by his doctors and failed to follow doctors' orders. He admitted that his hope and purpose in prescribing medication is to make a patient better, and that a patient's condition might worsen if they do not follow doctors' instructions.

Similar testimony came from Dr. Jeffrey Schaeffer ("Dr. Schaeffer"), an expert from Los Angeles California, retained by Appellant to perform a neuropsychological examination. Dr. Schaeffer testified that Appellant had been "noncompliant with great frequency" in his medical treatment. He also agreed that Appellant either failed to follow the recommended treatment or only partially complied.

Appellant admitted there were numerous occasions when he failed to follow through on physician-recommended treatments or evaluations, including refusal to fill prescriptions, take prescribed medication, return for suggested follow-up appointments, obtain suggested chiropractic treatments, and get recommended diagnostic studies. Appellant explained that he decided to ignore his doctors' advice because "it was my life and health." He testified he had sixty doctors.

Appellant's wife, Margaret Skinner, testified that she told Appellant not to take medication prescribed for him.

At the close of evidence, the trial court conducted a conference to review jury instructions and determined the evidence supported submission of Appellant's comparative fault to the jury.

Over Appellant's objection, the trial court submitted "Instruction 7" as a verdict director, which read as follows:

> In your verdict, you must assess a percentage of fault to defendant if you believe:
>
> First, Defendant failed to install handrails to the defendant's stairwell, and
>
> Second, such failure directly caused or directly contributed to cause damage to plaintiff.

Instruction 7 was a modification to Missouri Approved Instructions ("MAI") 17.17 permitted by 37.01 (the comparative fault verdict directing modification) and 19.01 (the verdict directing modification if multiple causes of damage are in evidence).[1] The trial court also gave separate instructions on Respondent's affirmative defenses that Appellant failed to mitigate his damages and was comparatively at fault for failure to follow his doctors' instructions.

---

1. Appellant offered an alternative Instruction 7 which read as follows:

Your verdict must be for plaintiff if you believe:

First, defendant failed to install handrails in the defendant's stairwell, and
Second, as a direct result of such conduct, plaintiff sustained damage.

The jury returned a verdict in favor of Respondent assessing zero fault against Respondent.

Appellant contends the trial court erred in refusing his proffered verdict directing instruction because there was not sufficient evidence of comparative fault to support Instruction 7. Appellant also contends the trial court erred in giving additional separate comparative fault instructions based upon Appellant's refusal to follow his doctors' instructions. Respondent contends the jury was instructed appropriately and any errors, if present, were not prejudicial.

The issues for our determination are:

1. Was it error to refuse Appellant's proposed Instruction 7, which excluded consideration of Appellant's comparative fault?

2. Was Appellant prejudiced by the submission of comparative fault instructions based upon Appellant's failure to follow his physicians' instructions?

## Standard of Review

■ "[W]e review the court's refusal to give a proffered verdict director *de novo*, evaluating whether the instruction was supported by the evidence and the law." *Ploch v. Hamai*, 213 S.W.3d 135, 139 (Mo.App. E.D.2006). "In making this determination as to a particular instruction, this Court views the evidence in the light most favorable to its submission." *Edgerton v. Morrison*, 280 S.W.3d 62, 65–66 (Mo. banc 2009). Before reversal can be predicated on instructional error, the complaining party must show that the instruction misdirected the jury, thereby resulting in prejudice. *Lee v. Mirbaha*, 722 S.W.2d 80, 83 (Mo. banc 1986).

## Analysis

### *Failure to Refuse Proposed Verdict Directing Instruction*

First, we consider whether it was error to refuse Appellant's proposed Instruction 7, which excluded submission of Appellant's comparative fault.

■ Missouri recognizes the submission of a party's comparative fault for failure to mitigate damages as appropriate. In *Love v. Park Lane Medical Center*, 737 S.W.2d 720, 725 (Mo. banc 1987), the Supreme Court noted that fault includes an unreasonable failure to avoid injury or to mitigate damages. The Court further explained that "[e]xpressing mitigation of damages as a percentage of fault reducing plaintiff's damages is the proper method for fairly accounting for the failure to mitigate...." *Id.*

■ In this case Respondent pled, as a part of Appellant's failure to mitigate damages and comparative fault, his failure to follow his doctors' instructions. The failure of a party to follow doctors' instructions has previously been recognized as appropriate to submit to the jury as comparative fault. *See Stone v. Duffy Distributors, Inc.*, 785 S.W.2d 671, 676 (Mo.App. S.D.1990). In oral argument, Appellant's counsel admitted that Instruction 7 was appropriate if there was evidence of Appellant's failure to follow his doctors' instructions. In determining if there is evidence to support Instruction 7, this Court must consider the evidence most favorable to that instruction with all favorable inferences reasonably drawn, and must disregard Appellant's evidence unless it supports the submission in that instruction. *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 759 (Mo.App. W.D. 2008). Following this standard, we find an abundance of evidence that Appellant failed to follow his doctors' instructions

and contributed to the conditions of which he complained. Appellant's conduct in refusing to take medication and pursue diagnostic tests were conscious decisions, which the jury could consider on the issue of comparative fault and how that affected mitigation of damages.

First, we look to Dr. Andrew's testimony. He testified that as the early intervener in Appellant's treatment, he was certain he "was not missing anything and . . . treating [Appellant's] symptoms appropriately." He explained that if a patient does not take the prescribed medication, he is not going to get the benefits of the medication. Dr. Andrew also testified that he recommended an EEG evaluation to examine brain wave activity and determine if there was any damage to the brain such as swelling or seizure-like activity. However, Appellant never appeared for the EEG test despite Dr. Andrew's recommendation. Finally, Dr. Andrew testified that allowing Appellant's multiple symptoms to go untreated could lead to psychiatric disorders such as somatoform disorders or conversion disorders.

Appellant's retained experts, Drs. Zackler and Schaeffer, offered similar observations concerning Appellant's failure to take prescribed medication and comply with his doctors' instructions.

Significantly, Appellant himself admitted he made a conscious decision to ignore his doctors' advice and refuse some of the treatment and medication recommended to him.

Accordingly, there was sufficient evidence for the trial court to submit to the jury the issue of Appellant's comparative fault for failure to follow the physicians' instructions. It was not prejudicial error for the trial court to refuse Appellant's proposed verdict directing instruction, which did not include submission of Appellant's comparative fault to the jury. To the contrary, submission of the instruction proffered by Appellant would have been error in view of the evidence of Appellant's refusal to follow his doctors' instructions. Appellant's point is denied.

### No Prejudice from Comparative Fault Instructions

■ Next, we consider whether Appellant was prejudiced by the submission of two comparative fault instructions based upon Appellant's failure to follow his doctors' instructions. We find no prejudice resulted from any alleged misdirecting of the jury; thus, it is unnecessary for us to reach a decision on Appellant's remaining points raising instructional error in the comparative fault instructions. *See Hudson v. Carr,* 668 S.W.2d 68, 71 (Mo. banc 1984).

Here, the verdict returned was unequivocally in favor of Respondent explicitly finding Respondent "0%" at fault. We must assume that the jury followed the instructions they were given and would have assessed a percentage of fault to Respondent had they found that each of the hypothesized facts were established by Appellant's case. *Barnes v. Tools & Machinery Builders, Inc.,* 715 S.W.2d 518 (Mo. banc 1986).

The court in *Lee,* considered similar facts and noted:

The jury necessarily must have concluded that the plaintiffs failed to establish at least one of the propositions necessary to return a verdict in their favor. Because of this conclusion, the jury was never required to reach the question of apportionment of fault. Because the jury found no liability on the part of the defendants and returned a general verdict for the defendants under instructions not dependent on Instruction Nos.

11 and 18, we find no prejudice to have resulted to the plaintiffs.

722 S.W.2d at 84 (internal footnote omitted) (citing *Barnes*, 715 S.W.2d at 518).

Likewise, the verdict in this case, finding zero fault in Respondent, negates any allegation of error in giving a comparative fault instruction. The jury did not reach issues of comparative fault so any error in the instructions was harmless. *See Lee*, 722 S.W.2d at 84.

Appellant's reliance on *Beers v. Western Auto Supply Co.*, 646 S.W.2d 812 (Mo.App. W.D.1982), and *Nugent v. Hamilton & Son, Inc.*, 417 S.W.2d 939 (Mo. banc 1967), is misplaced in that both of those decisions discuss the use of jury instructions prior to the adoption of comparative fault in Missouri, pursuant to *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983).

We conclude Appellant was not prejudiced by the submission of comparative fault instructions, based upon his failure to follow his doctors' instructions, because the jury returned a verdict finding no liability on the part of Respondent. Appellant's remaining points are denied.

Judgment for Respondent is affirmed.

SCOTT, C.J. and RAHMEYER, P.J., Concur.