**ROTH ENTERPRISES, INC.,**
Respondent/Appellant,

v.

**CITY OF STE. GENEVIEVE, Missouri,**
Appellant/Respondent.

Nos. 48089, 48059.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Dec. 26, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 13, 1985 in No. 48089.

Case Transferred to Supreme Court April 2, 1985.

Case Retransferred to Court of Appeals Sept. 12, 1985.

Original Opinion Reinstated Sept. 20, 1985.

David G. Beeson, Stephen C. Wilson, Buerkle, Beeson & Ludwig, Terrance J. Good, Lashly, Caruthers, Baer & Hamel, St. Louis, for appellant-respondent.

Weier, Sherby & Schoene, G. William Weier, C. Alan Schoene, St. Louis, for respondent-appellant.

CRIST, Judge.

Action under the Civil Rights Law 42 U.S.C. § 1983.

---

Plaintiff-appellant Roth received a jury award of $5,000 in damages under Civil Rights Law 42 U.S.C. § 1983. The trial court denied Roth's request for attorneys' fees and expenses under 42 U.S.C. § 1988, the Civil Rights Fees Award Act of 1976. Defendant-appellant (City) appealed the judgment rendered on the jury award. Roth appealed the court order denying attorneys' fees and expenses. We reverse the judgment rendered on the jury award and affirm the trial court's denial of expenses.

Roth, a closely-held corporation, owned by Wilfred "Wimpy" Roth and his wife, held approximately five acres of mostly undeveloped real estate in City. Roth alleged, under 42 U.S.C. § 1983, City violated its constitutional rights not to be deprived of its property, its right to do business in interstate commerce and to contract. Roth further alleged City interfered with the business relationship between plaintiff and Wal-Mart Stores, Inc. without justification or excuse.

The facts giving rise to the allegations are as follows: In late 1979, a representative of Wal-Mart Properties, Inc. contacted Wimpy Roth regarding the acquisition of property for use as a retail discount store location. In February, 1980, Roth and Wal-Mart entered into a purchase option contract for a consideration of One Thousand Dollars ($1,000.00) under which Wal-Mart had a six (6) month option to purchase five acres for One Hundred Thousand Dollars ($100,000.00). Wal-Mart took preliminary steps to evaluate the site and investigate title.

In April, 1980, Roth learned of a proposed City ordinance to regulate the development of parking lots. A portion of the proposed ordinance forbidding placement of a building within seventy-five (75) feet of the top of the bank of any stream or drainage channel would affect his five acre tract.

Wal-Mart's real estate committee decided not to purchase the property, after hearing a presentation concerning various aspects of the location by its representative. No mention was made of the proposed ordinance. The committee recommended the site be re-presented at a later date. It never was.

Shortly before the ordinance was passed, the Wal-Mart representative spoke with a city official regarding the ordinance and was reassured that City would work with Wal-Mart "however it needed to, to insure that Wal-Mart wouldn't be unduly restricted from building a store." On April 29, 1980, City's Board of Alderman passed the ordinance. Roth expressed concern that the seventy-five (75) foot setback requirement would prohibit use of the land by Wal-Mart. The City manager told Roth if he did not like it, "well, sue us." Roth had no further discussion with any City official through August, 1980.

Wal-Mart did not exercise its option to buy, which expired in August, 1980. In late August or early September, 1980, Roth's lawyer wrote to City, demanding the ordinance be withdrawn. City's attorney responded, noting the City Administrator had already given conditional approval to the Wal-Mart development. The City Attorney's letter indicated no knowledge that the ordinance applied to Roth's property at that time.

Wal-Mart approached Wimpy Roth again, late in 1980, expressing interest in another option on the property. Roth told the representative the ordinance was still in effect. Wal-Mart's real estate manager stated the company was interested in another option if it would permit Wal-Mart to develop the land "in its entirety for a Wal-Mart Store including Wal-Mart parking requirements." Roth felt this meant he had to get the variances taken off. Wal-Mart did not purchase a second option.

In March of 1981, the setback restriction was removed from Roth's tract by passage of a second ordinance. Roth testified his land was worth One Hundred Thousand Dollars ($100,000.00) in February, 1980,

and Seventy-Five Thousand Dollars ($75,-000.00) at the time of the trial.

The case was tried on May 19 and May 20, 1983. At trial, the land manager for Wal-Mart was permitted to testify that his predecessor stated Wal-Mart had not exercised the original option because of the ordinance. He said the setback requirement made the land useless for a Wal-Mart Store.

Also at trial, the City Administrator testified the ordinance was enacted to deal with water run-off problems. At a public hearing on the ordinance, the proposed Wal-Mart parking lot was discussed. Roth testified the City Administrator told him the ordinance applied to his property. Roth submitted no formal site plan to the City nor requested any variance on application of the ordinance to his tract.

Testimony of two long-time residents (husband and wife) was admitted over hearsay objections of City. The couple described a conversation among the Mayor, one of the Aldermen and the City Administrator before the start of a city council meeting in August, 1980. The men discussed their disfavor with the possibility of a local Wal-Mart Store. The City Administrator replied, "I don't think we have anything to worry about after the 11-page ordinance that we drew up."

The case proceeded to the jury under alleged violations of 42 U.S.C. § 1983, the Civil Rights Act of 1871. During deliberation, the jury inquired of the court by handwritten note "who pays court costs and lawyers' fees and expenses?" The court responded that it was unable to give additional instructions. After further deliberations, the jury returned a verdict in favor of plaintiff Roth and assessed damages at "court costs, legal fees for both sides plus One Dollar ($1.00)."

The court refused to accept the verdict as "inconsistent and erroneous as submitted." The jury returned to further deliberations. Its second verdict in favor of plaintiff Roth assessed damages at Five Thousand Dollars ($5,000.00). The trial court entered judgment on the second jury verdict.

■ City correctly asserts Roth did not make a submissible case in that it failed to allege and prove City took any steps to implement or enforce the ordinance in question. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611, 638 (1978), our U.S. Supreme Court stated liability attaches upon the execution of a city policy made by its law makers. When the policy is acted upon and inflicts injury, the City is then liable under Section 1983. In the case at bar, Roth failed to allege and prove City took any steps to implement and enforce the ordinance in question. Under *Robinson v. City of Raytown*, 606 S.W.2d 460, 464–65 (Mo.App.1980), Roth did not make a submissible case. *Robinson* requires a nexus between conduct and official policy. There must be action pursuant to official municipal policy of some nature which causes a constitutional tort before a municipality is liable. We need not review the question of whether there was a constitutional tort in this case.

■ Having found Roth did not make a submissible case, we find Roth was not entitled to attorneys' fees. *Robinson, supra* at 467. See *Zarcone v. Perry*, 581 F.2d 1039, 1044 (2nd Cir.1978) *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

Judgment rendered on the jury award is reversed. Trial court's denial of attorneys' fees and expenses is affirmed.

REINHARD, C.J., and DOWD and KAROHL, JJ., concur.