Michael DURLEY, Plaintiff–
Respondent,

v.

BOARD OF POLICE COMMISSION-
ERS, FOR CITY OF ST. LOUIS,
et al., Defendants–Appellant.

No. ED 88706.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 25, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 25, 2007.

Application for Transfer Denied
Dec. 18, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dustin James Allison, Jefferson City, MO, for appellants.

Gregory G. Fenlon, Clayton, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

The Board of Police Commissioners (Commissioners) for the City of St. Louis appeals from the entry of judgment by the Circuit Court of the City of St. Louis, the Honorable Dennis M. Schaumann presiding, after a jury found in favor of Plaintiff Michael Durley on his deprivation of property without due process of law claim un-

der 42 U.S.C. section 1983 (2004).[1] We reverse.[2]

### Factual and Procedural Background

Officers from the St. Louis Metropolitan Police Department arrested Michael Durley as a suspect in two pawn shop robberies at his·home on 13 November 1999. During the arrest, the officers seized some of Mr. Durley's property, including two guns and ammunition. The actual perpetrators of the pawn shop robberies later confessed, and the Circuit Attorney for the City of St. Louis dropped the charges against Mr. Durley before the case went to trial in 2000.

In the following months, Mr. Durley and his attorney made attempts to get his property back but were unable to do so. Then in 2002, the Commissioners filed in the circuit court for the City of St. Louis a petition to destroy weapons and ammunition in their custody. The Commissioners also requested notice by publication in the *St. Louis Daily Record,* a local legal newspaper. The court granted these requests, and the notice stated that the items would be available for inspection between 10 and 21 June 2002. The Commissioners destroyed the weapons, including the guns and ammunition that they had seized from Mr. Durley, in July 2002. Mr. Durley was not aware of this and did not retrieve his property before it was destroyed.

Mr. Durley then filed suit against the Commissioners and against three named police officers in their official capacities under 42 U.S.C. section 1983 for deprivation of property without due process of law as to both the guns and the ammunition.[3] The jury found for Mr. Durley on these claims and awarded him $31,660 in actual damages for the value of the guns and ammunition. The jury also awarded $56,105 in attorneys fees under 42 U.S.C. section 1988.

The Commissioners raise four points on appeal, but we find one to be dispositive and therefore will address only that point. The Commissioners argue that the verdict directors for the deprivation of property without due process claims misstated the law because they did not instruct the jury to find an unconstitutional policy or custom on the part of the Commissioners. They argue the trial court erred in refusing to give their proffered verdict director, which did ask the jury to consider the issue of unconstitutional policy or custom.

### Standard of Review

We review a trial court's refusal to give a proffered verdict director *de novo. Ploch v. Hamai,* 213 S.W.3d 135, 139 (Mo.Ct.App.E.D.2006) (citing *Marion v. Marcus,* 199 S.W.3d 887, 892 (Mo.Ct. App.W.D.2006); clarifying standard of review). Whether a non-MAI instruction is proper depends on whether it follows the substantive law and can be readily understood by the jury. *Smith v. Kovac,* 927 S.W.2d 493, 497 (Mo.Ct.App.E.D.1996). The instructions together must require a finding of all the ultimate facts necessary to sustain a verdict. *Id.* In order for us to reverse on instructional error, we must find that the instruction at issue misdirected, misled, or confused the jury, and prejudice resulted. *Dhyne v. State Farm Fire & Cas. Co.,* 188 S.W.3d 454, 458 (Mo. banc 2006).

---

**1.** All statutory references are to 42 U.S.C. (2004) unless otherwise indicated.

**2.** Accordingly, we deny Mr. Durley's Motion for Attorneys Fees on Appeal.

**3.** Durley also sued the officers in their individual capacities for wrongful search and seizure, but he did not prevail on those claims at trial and they are not at issue on appeal.

### Discussion

This claim is based on the following instruction submitted by Durley: [4]

> Your verdict must be for plaintiff Michael Durley, on his claim that the Board of Police Commissioners deprived him of his Constitutional right to due process of law if you believe:
>
> First, the police seized Plaintiff's [property], and
>
> Second, at some point subsequent to the seizure it became apparent that the [property] was not contraband or required as evidence in a court proceeding, and
>
> Third, after it was apparent that the [property] was not contraband or required as evidence in a court proceeding, the police failed to provide plaintiff with an appropriate notice and opportunity to be heard before deciding to destroy Plaintiff's ammunition, and
>
> Fourth, as a direct result, Plaintiff was damaged.

Because the suit derived from a claim of unconstitutional deprivation of property, the instruction directed the jury to find whether there was appropriate notice and opportunity to be heard. This is consistent with a procedural due process analysis. *See Conseco Fin. Servicing Corp. v. Mo. Dept. of Revenue*, 195 S.W.3d 410, 415–16 (Mo. banc 2006) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). However, because these claims involve municipal liability, they require more than solely a finding that the officials deprived

the plaintiff of appropriate notice and opportunity to be heard.

Durley's petition stated "The Board of Police Commissioners, ... and its official current members, ... are sued in their *official capacities* as members controlling the activities and policies of the St. Louis Metropolitan Police Department" (emphasis added). Because Durley sued the Commissioners in their official capacities, the action is considered to be against the entity that they represent. *Williams v. City of Kansas City*, 841 S.W.2d 193, 196 (Mo.Ct.App.W.D.1992) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1992)).

■ In order to sustain a claim against the Board of Police Commissioners under section 1983, a plaintiff must first show his constitutional rights were violated, but *he must also show* that this violation occurred through either an official policy or a custom of the municipality.[5] *Williams*, 841 S.W.2d at 196 (applying municipal liability analysis to Board of Police Commissioners); *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir.1998) (citing *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (laying out elements of municipal liability)). An official policy described here would consist of "a deliberate choice to follow a course of action ... made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." *Ware*, 150 F.3d at 880 (internal quotations and alterations omitted). Al-

---

4. The instruction we discuss was actually used for two counts: one as to ammunition, and one as to "property, excluding ammunition." The language was identical in both verdict directors, so we list it only once, substituting the word "property." This instruction was a not-in-MAI, and thus comes with the scrutiny of Rule 70.02.

5. We note that an approved and often-used source of jury instructions for federal section 1983 cases contains an instruction on point. 2 Devitt & Blackmar, *Federal Practice and Jury Instructions* section 103.11 (4th ed. Supp.2000).

ternatively, by "custom" we mean "misconduct so pervasive among non-policymaking officials as to constitute a custom or usage with the force of law." *Id.* (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018) (internal quotations omitted). Such a custom is shown by:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Id.* (alterations omitted). Causation is a required showing for both custom, as noted in the third element above, but also if the plaintiff has proven the existence of an official policy. *See Roth Enterprises, Inc. v. City of St. Genevieve,* 695 S.W.2d 903, 905 (Mo.Ct.App.E.D.1984) (requiring "a nexus between conduct an official policy" for municipal liability to attach).

■ As is evident from the language in the verdict directors, there was no element concerning official policy or custom on the part of the Commissioners, nor an element concerning whether there was a nexus between that policy or custom and the officers' conduct. Durley argues that the reason this language was left out of the verdict directors was that the Commissioners conceded the policy, thus including language about it in the verdict directors was unnecessary and would have only confused the jury. While we agree that it is not error to omit undisputed facts from verdict directors, *McPherson v. Bi–State Devel. Agency,* 702 S.W.2d 129, 132 (Mo.

Ct.App.E.D.1985), we disagree that such omission is merited here. We find nothing in the record showing a stipulation by the parties as to an official policy or custom, and we see nowhere that the Commissioners conceded such a policy. Durley's brief goes into detail about the policies in place at the time, alleges they were unconstitutional, and claims it is undisputed that these policies were the moving force behind the constitutional violation that the jury did find. However, these assertions *are findings the jury should have made,* not ones Durley may rely on now. We cannot assume simply because the parties did not decline a stipulation on the record that in fact a stipulation was reached. Therefore, the existence of an official policy or custom, and that the policy or custom caused the constitutional violation, were findings the jury was required to make in order for the Commissioners to be held liable. Because we find no evidence that the jury considered these things, the jury was misdirected and misled, and prejudice resulted.

### Conclusion

We find that the verdict directors used at trial did not follow the substantive law, and thus misdirected the jury. The Commissioners suffered prejudice thereby, in that they were entitled to have the jury consider whether there was an official policy or custom in place that caused a violation of Durley's constitutional right to due process before being held liable. Therefore, we reverse the judgment below, and we remand for a new trial.

REVERSED AND REMANDED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.