**R. Ross POOL and Tammie Pool,**
**Plaintiffs–Appellants,**

v.

**FARM BUREAU TOWN & COUNTRY INSURANCE COMPANY OF MISSOURI, Defendant–Respondent.**

No. SD 29823.

Missouri Court of Appeals,
Southern District,
Division One.

April 19, 2010.

Rehearing Denied May 11, 2010.

Application for Transfer Denied June 29, 2010.

Matthew J. Devoti, St. Louis, MO, for Appellants.

Patrick A. Bousquet, St. Louis, MO, for Respondent.

DON E. BURRELL, Judge.

Ronnie R. Pool ("Ross"[1]) and Tammie Pool ("Tammie") (collectively, "Plaintiffs"), husband and wife, sued their insurance company, Farm Bureau Town & Country Insurance Company of Missouri ("Farm Bureau"), over its handling of a property damage claim. Plaintiffs asserted claims based on breach of contract (Count I), breach of fiduciary duty (Count II), and fraud (Count III). The trial court entered summary judgment in favor of Farm Bureau on Plaintiffs' breach of fiduciary duty and fraud claims. Plaintiffs' remaining contract claim was tried to a jury. The jury rendered a verdict in favor of Farm Bureau, and the trial court entered judgment in accordance with that verdict. When the trial court denied Plaintiffs' Motion for New Trial, this appeal timely followed.

Plaintiffs allege the trial court committed reversible error by: (1) permitting Tammie to be cross-examined with a facsimile copy of a document entitled Construction Authorization ("the Construction Authorization"); (2) receiving the Construction Authorization into evidence; (3) submitting a jury instruction that did not require the jury to find all of the ultimate facts necessary to establish Farm Bureau's affirmative defense of accord and satisfaction; and (4) granting summary judgment to Farm Bureau on Plaintiffs' breach of fiduciary duty claim.[2] Finding merit in Plaintiffs' instructional error claim, we affirm the trial court's judgment in favor of Farm Bureau on Plaintiffs' breach of fiduciary duty claim, reverse the judgment in favor of Farm Bureau on Plaintiffs' contract claim, and remand the matter for a new trial on Plaintiffs' contract claim.

## Facts[3]

In February of 2003, a water pipe inside Plaintiffs' home burst. The released water traveled through the wall, under the floor, and eventually pooled in the crawlspace beneath the house. That water ultimately warped the center beam supporting the floor joists and caused the roof and the walls in the kitchen and bedroom to settle. At the time of these events, Plaintiffs had in effect a homeowners' insurance policy acquired from Farm Bureau that provided coverage for damage to the home incurred as a result of sudden, accidental and direct loss as well as coverage for any personal property that was thereby physically destroyed or rendered unusable. In the event of such a loss, the policy provided that "[a]t our option, we will pay to you actual cost of the damage or the cost of

---

1. Ronnie R. Pool was referred to in the transcript by his middle name, Ross. Because Ross and Tammie Pool share the same last name, we use their first or middle names in this opinion solely for ease of identification.

2. Plaintiffs do not challenge the trial court's summary judgment in favor of Farm Bureau on Plaintiffs' fraud count.

3. As more fully explained hereafter, we make reference in this opinion to evidence both favorable and unfavorable to the judgment entered by the trial court because Plaintiffs' points are governed by different standards of review.

repairs so that your property is returned to the same condition it was prior to the loss." The term "you" was defined by the policy as "the named insured." Ross was listed in the policy as the named insured.

Ross was deployed in Iraq as an active member of the United States Marine Corps when the pipe burst. When Tammie contacted Farm Bureau to report the water damage, the agent she spoke with on the telephone informed her that only Ross, as the named insured, could initiate a claim. Farm Bureau did not open a property loss claim for Plaintiffs until nearly two months after the pipe burst.

Once Farm Bureau opened the claim, Tammie began searching for a contractor to make the necessary repairs. Mark Fuchs ("Fuchs") was the claims representative Farm Bureau assigned to handle Plaintiffs' claim. Fuchs informed Tammie "that the choice of contractor was hers and hers alone," and that he had no preference as to whom she chose. Fuchs's supervisor, Bruce Bruemmer, also stated that it was the homeowner's decision as to who to hire to fix any damages incurred. Tammie testified that she obtained two estimates, one from Good Construction and another from Commercial Installations. Fuchs rejected the $31,300 Commercial Installations estimate as too high or lacking sufficient detail and testified that he never received an estimate from Good Construction. Fuchs attempted to speak with a representative from Commercial Installations but had been unable to reach him.

During this same time period, Fuchs had become acquainted with Anthony "Tony" Breedlove ("Breedlove" or "Tony") of Mastercraft Construction ("Mastercraft") when Breedlove made a cold call on Fuchs to solicit business from Farm Bureau. Fuchs testified that Breedlove had a computer program that would write a detailed estimate, so Fuchs contacted Breedlove to ask him to do an estimate on Plaintiffs' home. Breedlove testified that he had received such a call from Fuchs informing him that Plaintiffs were having a difficult time finding a contractor and asking if he would be "willing to go down there." Breedlove agreed to go to Plaintiffs' home to prepare an estimate.

Breedlove testified that the first time he went to Plaintiffs' home, he had Tammie sign the Construction Authorization before he began working on his estimate. Breedlove testified that the Construction Authorization was a form document that authorized Mastercraft to work with Farm Bureau and to begin the repair work on Plaintiffs' home. It also explained that Mastercraft was not employed by or affiliated with Farm Bureau in any way and authorized Farm Bureau to add Mastercraft as an additional payee on any checks issued by Farm Bureau for repairs made to Plaintiffs' home. This was the standard authorization he had used with all of his clients. Breedlove testified that he then faxed a copy of the Construction Authorization to Farm Bureau "to allow them to put our names on the checks." Fuchs also testified that Mastercraft was placed on the checks Farm Bureau issued at "[Tammie]'s request." Tammie testified that the signature on the Construction Authorization appeared to be hers.

Farm Bureau approved the estimate given by Mastercraft and eventually issued three checks to pay for the repairs made to Plaintiffs' home. Each of those checks was made payable to "Ronnie R. Pool and Mastercraft Construction, Tony." Tammie testified that she had asked Fuchs to make the checks payable solely to her "[b]ecause then I would have a choice of the estimates that I had, and then I could handle it

rather than using a Power of Attorney.[4] You know, just less hassle." Tammie testified that she did not want Mastercraft's name on the checks but that Fuchs told her it was "company policy" to put the name of the policyholder and the contractor on the checks.

Tammie allowed Mastercraft to begin working on her home after she received a claim check with both names on it. As to the first joint check issued by Farm Bureau to Ross and Mastercraft, Tammie and Breedlove both signed it, and Tammie took it to the bank and had it converted to a cashier's check. Tammie put $2,000 of the check's proceeds in her bank account, giving the rest to Breedlove/Mastercraft. When Breedlove received the next two joint checks from Fuchs, he picked up Tammie, whose car was not operable, and they went to the bank together to cash them. Tammie endorsed the second check (in the amount of $15,688.70) and gave it to Breedlove. Breedlove then had Tammie keep the third check (in the amount of $4,584.80), telling her it was "insurance" that he would finish the job. At no time during this process did Tammie indicate that she did not wish to hire Mastercraft as the contractor. Tammie testified, however, that she believed she had no choice but to permit Breedlove/Mastercraft to work on her home because "he was on the check."

Plaintiffs' contract claim against Farm Bureau included an allegation that Farm Bureau's failure to pay their claim was vexatious, not because Farm Bureau failed to pay an agreed-upon amount to repair the damages to Plaintiffs' home, but because Farm Bureau failed to comply with its policy language that indicated payment would be made to the insured alone, not to the insured and the contractor. In defending that portion of Plaintiffs' claim,

Farm Bureau questioned Tammie about the Construction Authorization she had apparently signed. After Tammie admitted that the signature on the Construction Authorization appeared to be hers, the trial court also received the document into evidence over Plaintiffs' "best evidence" objection. The Construction Authorization received into evidence was the document Farm Bureau had received via facsimile transmission from Breedlove. Breedlove testified that the original Construction Authorization signed by Tammie was no longer available, as his file relating to the work he did for Plaintiffs had been destroyed.

In total, Mastercraft received more than $22,000 of the $27,092.27 paid by Farm Bureau on Plaintiffs' claim. Within one month of Breedlove receiving the second check, Mastercraft stopped work on Plaintiffs' home, which is no longer habitable. Tammie testified that she did not use any of the money she had retained from the checks issued by Farm Bureau to prevent any further deterioration to the home. Tammie also did not alert anyone at Farm Bureau that Breedlove had walked off the job until at least five months after he had done so.

## Analysis

### Point I: Admission of the Construction Authorization

Plaintiffs' first point alleges the trial court abused its discretion by allowing Farm Bureau to cross-examine Tammie with the Construction Authorization and then receiving it into evidence because "[Farm Bureau] failed to establish an adequate foundation for admission of [the Construction Authorization], in that [the Construction Authorization] is a copy of a facsimile which [Farm Bureau] failed to

4. Tammie had a Power of Attorney that authorized her to act on Ross's behalf.

demonstrate was trustworthy and [Farm Bureau] failed to demonstrate was a true copy of a writing that once existed." Plaintiffs argue that no witness testified that the document "was a correct duplicate of a document that once existed." Because this issue is sure to arise on retrial, we will address it. *See City of Lee's Summit v. R & R Equities, LLC*, 112 S.W.3d 38, 43 (Mo.App. W.D.2003); *Yingling v. Hartwig*, 925 S.W.2d 952, 957 (Mo.App. W.D.1996).

### A. Standard of Review

■ "The admission or exclusion of evidence is a matter of trial court discretion." *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs. Inc.*, 204 S.W.3d 183, 193 n. 3 (Mo. App. E.D.2006). We will reverse the trial court's ruling only "if the court has clearly abused its discretion." *Id.* at 195. "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and so arbitrary and unreasonable that the ruling shocks the sense of justice and indicates a lack of careful deliberation." *Id.* "Upon review, we must view the evidence and any reasonable inferences in the light most favorable to the verdict, and disregard any contrary facts and inferences." *Sparkman v. Columbia Mut. Ins. Co.*, 271 S.W.3d 619, 623 (Mo.App. S.D.2008).

■ We first note that Plaintiffs' point is multifarious in violation of Rule 84.04[5] in that it attempts to challenge two separate rulings in a single point relied on. *See State ex rel. Koster v. Allen*, 298 S.W.3d 139, 144 (Mo.App. S.D.2009). To allow an attorney to refer to a document while attempting to impeach a witness's testimony during cross-examination is not the same ruling as allowing the document itself to be received as substantive evidence. To impeach a witness with a prior inconsistent statement, "[t]he witness must

be given a chance to refresh his recollection of the prior statement and to admit, deny, or explain it." *Johnson v. National Super Mkts., Inc.*, 752 S.W.2d 809, 812 (Mo.App. E.D.1988). A different foundation is necessary to support the admission of a document under the best evidence rule.

■ Although we may choose to review a defective point as long as the deficiency does not impede a disposition on the merits, *Bolz v. Hatfield*, 41 S.W.3d 566, 571 (Mo.App. S.D.2001), there is no need for us to determine whether we should do so in this case because Plaintiffs have failed to cite any authority supporting their argument that the trial court erred in allowing defense counsel to refer to the contents of the Construction Authorization while cross-examining Tammie. As a result, this portion of Plaintiffs' first point is deemed abandoned and fails for that reason. *See Donovan v. Temporary Help*, 54 S.W.3d 718, 720 (Mo.App. E.D.2001).

### B. The Best Evidence Rule

■ The remaining portion of Plaintiffs' first point challenges the admission of the Construction Authorization under the "best evidence rule." "The 'best evidence rule applies only when the evidence is offered to prove the terms or contents of a writing or recording.'" *Boroughf v. Bank of Am., N.A.*, 159 S.W.3d 498, 503 (Mo. App. S.D.2005) (quoting *Cooley v. Director of Revenue*, 896 S.W.2d 468, 470 (Mo. banc 1995)). "The principal reason for the rule is the danger of mistransmission of the contents of a writing when evidence other than the writing itself is offered for the purpose of proving its terms." *Id.* "For example, the exact words used are critically important in the case of deeds, wills or contracts, where even a slight variation of

---

**5.** Unless otherwise noted, all rule references are to Missouri Court Rules (2009).

those words may mean a great difference in the rights conferred under the document." *Id.* "A trial court has broad discretion when ruling upon a complaint that proffered documentary evidence violates the best evidence rule, and the court's decision is subject to reversal only in cases of clear abuse." *Christian Health Care of Springfield West Park, Inc. v. Little,* 145 S.W.3d 44, 53 (Mo.App. S.D.2004).

██ In the instant case, Farm Bureau did not seek admission of the Construction Authorization to prove its exact terms or even to prove that it had actually been executed by Tammie. Instead, Farm Bureau introduced the document as evidence that the Construction Authorization faxed to Farm Bureau provided Farm Bureau with a good-faith basis to believe that Tammie had authorized Farm Bureau to include Mastercraft as a joint payee on the checks it issued; it was relevant as a defense to Plaintiffs' claim that Farm Bureau's decision to make the claim checks jointly payable to its named insured and Mastercraft was willful and without reasonable cause or excuse. *See Shirkey v. Guarantee Trust & Life Ins. Co.,* 258 S.W.3d 885, 888–89 (Mo.App. W.D.2008). When used for that purpose, the facsimile copy of the Construction Authorization possessed by Farm Bureau *was* the "original" document at issue and the best evidence rule was not implicated. Plaintiffs' first point is denied.

*Point II: Jury Instruction No. 7*

Plaintiffs' second point alleges the trial court erred in submitting Instruction No. 7 to the jury because the instruction did not require the jury to find all of the ultimate facts necessary to establish Farm Bureau's affirmative defense of accord and satisfaction. Specifically, Plaintiffs allege the instruction did not ask the jury to determine whether Plaintiffs had agreed to allow

Farm Bureau to issue claim checks that included Mastercraft as a joint payee.

### A. Standard of Review

██ "This Court reviews *de novo,* as a question of law, whether a jury was properly instructed." *Morgan v. State,* 272 S.W.3d 909, 911 (Mo.App. W.D.2009). "Although our review is *de novo,* we do view the evidence in the light most favorable to the submission of the instruction and we disregard evidence and inferences to the contrary." *Bradford v. BJC Corp. Health Svcs.,* 200 S.W.3d 173, 178–79 (Mo. App. E.D.2006). Furthermore, "we will not reverse a verdict for instruction error unless the error is prejudicial in that it materially affects the merits of the action." *St. Charles County v. Olendorff,* 234 S.W.3d 492, 495 (Mo.App. E.D.2007).

### B. Non–MAI Instructions

██ Rule 70.02 governs the provision of instructions to juries. *McBryde v. Ritenour Sch. Dist.,* 207 S.W.3d 162, 168 (Mo.App. E.D.2006). "When there is no applicable MAI instruction, a non-MAI instruction may be given if it conforms to the requirements of Rule 70.02 in that it is simple, brief, impartial and free from argument." *City of Kansas City v. Habelitz,* 857 S.W.2d 299, 303 (Mo.App. W.D.1993). "And in giving such a non-MAI instruction, 'the court must adopt an instruction that follows the substantive law and can be readily understood by the jury.'" *Morgan,* 272 S.W.3d at 911 (quoting *Lewis v. State,* 152 S.W.3d 325, 329 (Mo.App. W.D. 2004)); Rule 70.02(b). "The instructions together must require a finding of all the ultimate facts necessary to sustain a verdict." *Durley v. Board of Police Comm'rs,* 238 S.W.3d 685, 687 (Mo.App. E.D.2007). "In order for us to reverse on instructional error, we must find that the instruction at issue misdirected, misled, or confused the jury, and prejudice resulted." *Id.* "As a

general proposition it is error to remove an essential element of a case from the jury's consideration." *Huff v. Union Elec. Co.*, 598 S.W.2d 503, 515 (Mo.App. E.D. 1980). "However, a jury should not be required to find an element or fact not actually contested or in issue." *Id.*

### C. Accord and Satisfaction

"An accord is an agreement for the settlement of a previously existing claim by a substituted performance." *Hiblovic v. Cinco–T.C., Inc.*, 40 S.W.3d 921, 923 (Mo.App. E.D.2001). "Satisfaction is the performance of the agreement." *Id.* "An accord and satisfaction requires both the accord and satisfaction." *Id.* "Whether an accord and satisfaction has been reached is generally a question of fact." *Id.* "Accord and satisfaction must meet the basic requirements of a simple contract." *Alaska Fed. Sav. & Loan Ass'n. v. Hoffman*, 485 S.W.2d 118, 123 (Mo.App.K.C.D. 1972). "The contract hinges primarily on the matter of intention, and if the facts regarding intention are in dispute, such disputed facts are for the determination of the jury." *Id.* Finally, "[t]he issue of accord and satisfaction must be determined according to the existing facts at the time of the settlement." *Id.* at 124. "Insurance policies are contracts, and the rules of contract construction apply." *Arbeitman v. Monumental Life Ins. Co.*, 878 S.W.2d 915, 916 (Mo.App. E.D.1994). "Contract interpretation is a question of law." *Intertel*, 204 S.W.3d at 196. "The words of an insurance contract are given their ordinary meaning." *Arbeitman*, 878 S.W.2d at 916.

### D. Contents of Instruction No. 7

Instruction No. 7 stated: "Your verdict must be for Defendant if you believe: First, Plaintiffs and Defendant agreed that Plaintiff's [sic] insurance claim would be settled for $27,092.27, and Second, Defendant provided Plaintiffs with settlement checks totaling $27,092.27." The problem with this instruction is that none of the facts it submitted to the jury were in dispute. Plaintiffs admitted that they had agreed to settle their claim for $27,092.27 and that Tammie had received and accepted all three settlement checks without disputing their amounts. What Plaintiffs disputed was whether they had agreed to allow Farm Bureau to make Mastercraft/Breedlove a joint payee on those checks.

The insurance contract drafted by Farm Bureau provided that, "[a]t our option, we will pay to you [Ross, the named insured] actual cost of the damage or the cost of repairs so that your property is returned to the same condition it was prior to the loss." Farm Bureau admitted that it made its checks payable not to "Ronnie R. Pool," but to "Ronnie R. Pool and Mastercraft Construction, Tony[.]" Because the payment of the cost of repairs to both the named insured and the contractor was in contravention of the parties' original written agreement, the disputed matter of fact to be resolved by the jury was whether Plaintiffs had agreed to a modification (an accord) of the payment provision set forth in the insurance policy.

Tammie testified that she did not agree to have the checks made jointly payable to Ross and Mastercraft. Farm Bureau had received a document that indicated otherwise—that Plaintiffs had agreed to have Mastercraft added as a joint payee on the claim checks. As argued by Plaintiffs, this critical disputed question of fact should have been submitted to the jury for its resolution, and Instruction No. 7 contained no such submission. In short, Instruction No. 7 asked the jury to make findings on matters that were not actually in dispute and omitted the only ultimate fact question the jury should have been directed to resolve. Because Instruction No. 7 imper-

missibly allowed the jury to find in favor of Farm Bureau on its affirmative defense of accord and satisfaction without first finding that the parties had reached an agreement to have the claim checks made payable to both the named insured and the contractor, it constituted a misstatement of the law.

 Having found the instruction to be erroneous, we must next determine whether Plaintiffs were prejudiced by the error. "For prejudice to be found sufficient to reverse for instructional error, the error must have materially affected the merits and outcome of the case." *Rice v. Bol,* 116 S.W.3d 599, 606 (Mo.App. W.D. 2003). *See also Conley v. Fuhrman,* 355 S.W.2d 861, 866–67 (Mo. banc 1962). In a case where there is conflicting evidence from which more than one inference can be drawn, "the drawing of the inference is properly left to the jury." *Cline v. Carthage Crushed Limestone Co.,* 504 S.W.2d 102, 110 (Mo. banc 1973). "Likewise, on the ultimate test [ ] if the facts and legitimate inferences to be drawn from the evidence are in dispute (as they are in this case) the issue is one for the jury." *Id.* (parenthetical comment in original).

Here, even if the jury believed by a preponderance of the evidence that Farm Bureau had breached the terms of its written agreement (the insurance policy) regarding to whom claims checks would be made payable, Instruction No. 7 allowed it to enter a judgment in favor of Farm Bureau without having to find that Plaintiffs had subsequently agreed to accept payment in a different form. In other words, if the jury had been required to determine whether Plaintiffs had agreed to have Mastercraft/Breedlove included as a joint payee on the claim checks, and found that they had not done so, then the jury could not have found in favor of Farm Bureau on its affirmative defense of accord and satisfaction and might have entered a verdict in favor of Plaintiffs.

 Farm Bureau argues that the provision requiring payment to "you" under the contract does not mean payment to "only you." We do not find this argument persuasive for two reasons. First, Farm Bureau sought to strictly enforce "you" as "only you" to the point of excluding Tammie as a payee on the checks or as a person with authority to open an insurance claim. Farm Bureau's actions in dealing with Plaintiffs show that it interpreted "you" to mean "the named insured" (Ross) to the exclusion of all others. Secondly, "[i]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007) (internal punctuation omitted). "This rule, often referred to as the doctrine of '*contra proferent[e]m,*' is applied 'more rigorously in insurance contracts than in other contracts' in Missouri." *Burns v. Smith,* 303 S.W.3d 505, 509–10 (Mo. banc 2010) (quoting *Mansion Hills Condo. Ass'n v. American Family Mut. Ins. Co.,* 62 S.W.3d 633, 637 (Mo.App. E.D. 2001)). We would thus construe the policy language against Farm Bureau and determine that "you" means "the named insured" to the exclusion of all others. Point granted.

*Point III: Summary Judgment for Farm Bureau on Breach of Fiduciary Duty Claim*

 Plaintiffs' third point alleges the trial court erred in granting summary judgment in favor of Farm Bureau on Plaintiffs' breach of fiduciary duty claim. Although Plaintiffs acknowledge that an insurer generally does not owe fiduciary

duties to its insured when the insured is making a first party claim against the insurer,[6] they argue that Farm Bureau assumed such a duty as a matter of law when it became involved in selecting Mastercraft to handle the repairs to Plaintiffs' home.

### A. Standard of Review

We review *de novo* the trial court's grant of summary judgment. *Conway v. St. Louis County*, 254 S.W.3d 159, 163 (Mo.App. E.D.2008). "When considering appeals from summary judgment, we review the record in the light most favorable to the nonmovant, and give that party the benefit of all reasonable inferences." *Hiblovic*, 40 S.W.3d at 923. "In addition, if the trial court fails to specify the grounds upon which it granted summary judgment, we will affirm the grant of summary judgment if it is proper under any theory supported by the record and presented on appeal." *Conway*, 254 S.W.3d at 164. "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of granting the motion initially." *Gambill v. Cedar Fork Mut. Aid Soc'y*, 967 S.W.2d 310, 312 (Mo.App. S.D.1998). "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's judgment." *Id.*

### B. Summary Judgment

"Pursuant to Missouri Supreme Court Rule 74.04(c)(6), the trial court shall grant summary judgment if 'the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" *Conway*, 254 S.W.3d at 163. A defending party is "entitled to summary judgment if [it] can show facts that negate any element of a cause of action or if they can show there is no genuine dispute as to the existence of facts necessary to support a properly pleaded affirmative defense." *Id.* at 164. "Plaintiffs must show a genuine dispute as to the facts underlying defendants' right to judgment on either ground." *Id.* "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment should only be maintained where facts are not in dispute so that the prevailing party can be determined as a matter of law." *Rogers v. Frank C. Mitchell Co.*, 908 S.W.2d 387, 388 (Mo.App. E.D.1995).

The trial court granted Farm Bureau's motion for summary judgment regarding Plaintiffs' breach of fiduciary duty claim without issuing a statement of its reasons for doing so. As such, we must determine whether any theory in the record supports it.

### C. The Existence of a Fiduciary Relationship

Farm Bureau's motions for summary judgment argued that Plaintiffs failed to aver facts showing the existence of a fiduciary relationship between Plaintiffs and Farm Bureau. To make a submissible case for breach of fiduciary duty, Plaintiffs "had to present facts showing:

---

**6.** *See Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d 13, 19 (Mo.App. W.D.1983) ("In first party claims by insureds against insurers under policies affording coverage for loss or damage to property and related types of insurance, the parties occupy a contractually adversary or creditor-debtor status as opposed to standing in a fiduciary relationship").

(1) the existence of a fiduciary relationship between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm." *Grewell v. State Farm Mut. Auto. Ins. Co.,* 162 S.W.3d 503, 508 (Mo.App. W.D.2005). "A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *Shervin v. Huntleigh Sec. Corp.,* 85 S.W.3d 737, 740–41 (Mo.App. E.D.2002).

 "Fiduciary duty is not created by a unilateral decision to repose trust and confidence; it derives from the conduct or undertaking of the purported fiduciary which is recognized by the law as justifying such reliance." *Farmers Ins. Co., Inc. v. McCarthy,* 871 S.W.2d 82, 87 (Mo.App. E.D.1994). Missouri law is clear that "an insurer, who is entrusted to defend a claim on behalf of the insured, acts in a fiduciary capacity." *Grewell,* 162 S.W.3d at 509. In the situation where a third party is suing an insurer's policy holder, it is the insurance company's control over the claim that creates a fiduciary relationship between insurer and insured. When the insured is suing its own insurance company, the opposite is true:

> The postulate for this fiduciary relationship is notably absent in claims by an insured against an insurer under policies of property and related types of insurance. Such claims are not controlled by the insurer to the exclusion of the insured nor is the specter of a judgment against an insured in excess of coverage a present danger if an insurer fails to exercise good faith. In first party claims by insureds against insurers under policies affording coverage for loss or damage to property and related

types of insurance, the parties occupy a contractually adversary or creditor-debtor status as opposed to standing in a fiduciary relationship.

*Duncan v. Andrew County Mut. Ins. Co.,* 665 S.W.2d 13, 19 (Mo.App. W.D.1983). There is no dispute that this was a first party claim by Plaintiffs against their insurer, Farm Bureau. As a matter of law, the parties' relationship was adversarial, not fiduciary. The trial court correctly ruled in favor of Farm Bureau because the first element of Plaintiffs' breach of fiduciary duty claim—the existence of a fiduciary duty—could not be established as a matter of law. Point III is denied.

### Decision

Because Instruction No. 7 erroneously failed to direct the jury to determine all of the ultimate facts necessary to support Farm Bureau's affirmative defense of accord and satisfaction to Plaintiffs' contract claim and Plaintiffs were prejudiced thereby, the judgment as to Count I is reversed and the cause is remanded for a new trial on that claim in a manner consistent with this opinion. In all other regards, the judgment of the trial court is affirmed.

BARNEY, J., and BATES, P.J., Concur.