

# Missouri Court of Appeals
## Southern District

### In Division

STEPHEN BRADY,                     )

                                    )

      Plaintiff-Appellant,       )

                                    )

     v.                        )        No. SD38135

                                    )

CITY OF SPRINGFIELD, MISSOURI,  )       **Filed:  April 1, 2024**

                                    )

      Defendant-Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Michael J. Cordonnier, Judge

**<u>AFFIRMED</u>**

Stephen Brady ("Brady") appeals the trial court's judgment, following a jury trial, in favor of the City of Springfield, Missouri (the "City") on Brady's premises liability claim to recover damages Brady sustained from an automated gate that closed while he was exiting the City's park on his motorcycle.  Brady asserts five points on appeal, all alleging instructional error related to jury Instruction No. 9, the comparative fault verdict director.  Because any alleged instructional error in Instruction No. 9 was not prejudicial to Brady, we affirm the trial court's judgment.

1

**Factual Background and Procedural History**

On the evening of June 27, 2020, Brady and a group of motorcycle riders drove their motorcycles into Lake Springfield Park (the "Park"), which was owned by the City. Due to its purpose and setting, there is very little artificial lighting at the Park. As such, the Park is open to the public only from sunrise to sunset to prevent harm to either a visitor or the Park itself. The City placed a sign at the entrance of the Park providing notice that the "Park is Closed from Sunset to Sunrise."[1] In order to secure the Park overnight, a large metal gate is installed across the entrance road to the Park. Prior to 2019, Park employees manually opened and closed the gate each day. In 2019, the City converted the gate to an automated system. The gate automatically closes at 10:30 p.m.[2] In order to prevent a visitor from becoming trapped inside the Park overnight, a sensor in the road leading out of the Park triggers the gate to open temporarily. A sign posted on the road exiting the Park instructs drivers to "Stop Here When Gate is Closed." When Brady arrived at the Park, the automated gates at the Park's entrance were open. After Brady and the riders entered the Park, the timer closed the gate.

After driving through the Park and stopping to socialize at the boat landing for 10 to 15 minutes, Brady and the other riders began departing the Park, with Brady driving his motorcycle near the end of the group. As Brady approached the Park's exit, the gate was open as one or more of the riders who exited the park prior to Brady triggered the sensor to open the gate to

---

[1] Brady testified that he did not see the sign and that, had he seen the sign, he would not have entered the Park.

[2] There was evidence presented that rental of the Park's boathouse is allowed from 9:00 a.m. until 10:00 p.m. The schedule of closing the gate at 10:30 p.m. is to accommodate guests or staff leaving the boathouse at 10:00 p.m. Although the boathouse was open until 10:00 p.m., by rental and prior agreement, the Park itself closed at sunset.

allow the riders to exit. As Brady drove through the exit, the gate began swinging shut, and the end of the gate struck Brady's chest, causing him to fall off his motorcycle and sustain injuries.

Brady filed a lawsuit against the City and alleged the Park's exit was in a dangerous condition because the gate closed on him while he was exiting the Park. At trial, the City offered Instruction No. 9, a comparative fault jury instruction, which states:

INSTRUCTION NO. 9

In your verdict, you must assess a percentage of fault to plaintiff [Brady] if you believe:

> First, either:
> [Brady] failed to keep a careful lookout, or
>
> [Brady] entered [the City's Park] when the [P]ark was closed at sunset, and
>
> Second, [Brady], in any one or more of the respects submitted in paragraph First, was thereby negligent, and
>
> Third, such negligence of [Brady] directly caused or directly contributed to cause any damage [Brady] may have sustained.

The term "negligent" or "negligence" as used in this instruction with respect to failure to keep a careful lookout means the failure to use the highest degree of care. The phrase "highest degree of care" means that degree of care that a very careful person would use under the same or similar circumstances.

The term "negligent" or "negligence" as used in this instruction with respect to entering when the [P]ark was closed means the failure to use that degree of care that an ordinarily careful person would use under the same or similar circumstances.

Brady objected to Instruction No. 9 arguing that the instruction assumed disputed material facts as true, was a roving commission, and did not follow Missouri substantive law on causation because the jury instruction required the jury to assess a percentage of fault to Brady if they found Brady "entered [the City's Park] when the [P]ark was closed at sunset[.]" The trial court overruled Brady's objections and gave Instruction No. 9 to the jury. During deliberations

3

and prior to returning its verdict, the jury submitted the following question to the trial court: "Are there different consequences for assigning zero percent blame as zero percent defendant and zero percent plaintiff versus zero percent defendant and a hundred percent plaintiff?" The trial court answered the question stating: "You must be guided by the evidence admitted and the instructions of the Court." The jury returned its verdict assessing zero percent fault to the City and zero percent fault to Brady. The trial court entered judgment in favor of the City. Brady filed a motion for new trial asserting allegations of instructional error related to Instruction No. 9 previously raised at trial. The trial court denied Brady's motion for new trial and Brady timely appealed.

## Points on Appeal

Brady presents five points on appeal. All five points allege instructional error related to Instruction No. 9. Brady asserts the trial court erred in giving Instruction No. 9 because: (1) it "gave the jury a roving commission" in that it "assumed the disputed fact that [Brady] knew or should have known that he 'entered [the Park] when the [P]ark was closed at sunset'" (Point I); (2) it "gave the jury a roving commission" in that it "submitted to the jury the broad, abstract hypothesis of negligence that [Brady] must be assessed fault if he 'enter[ed] [the Park] when the [P]ark was closed at sunset'" (Point II); (3) it "failed to follow the substantive law of Missouri regarding proximate causation" (Point III); (4) it "failed to follow the substantive law of Missouri regarding the assumption of risk defense" (Point IV); and (5) it "failed to follow the substantive law of Missouri regarding negligence per se" (Point V).

## *Standard of Review*

Whether a jury was instructed properly is a question of law reviewed by the appellate court *de novo*. ***Klotz v. St. Anthony's Med. Ctr.***, 311 S.W.3d 752, 766 (Mo. banc 2010); ***Penzel***

4

*Constr. Co., Inc. v. Jackson R-2 School Dist.*, 635 S.W.3d 109, 123 (Mo. App. E.D. 2021);

*Wilson v. KAL Motel, Inc.*, 524 S.W.3d 572, 573 (Mo. App. W.D. 2017); *Pool v. Farm Bureau*

*Town & Country Ins. Co. of Missouri*, 311 S.W.3d 895, 903 (Mo. App. S.D. 2010). The party

claiming instructional error must establish the instruction at issue misdirected, misled, or

confused the jury. *Penzel*, 635 S.W.3d at 123. In appeals involving comparative fault

instructional error, the appellate court reviews the evidence "in a light most favorable to the

submission of the instruction." *Rudin v. Parkway Sch. Dist.*, 30 S.W.3d 838, 841 (Mo. App.

E.D. 2000). Instructional error requires reversal of a judgment only if such error resulted in

prejudice. *Id.*; *Klotz*, 311 S.W.3d at 766; *Penzel*, 635 S.W.3d at 123. Instructional error is

prejudicial if it "materially affected the merits of the action." *Wilson*, 524 S.W.3d at 573; *Pool*,

311 S.W.3d at 903.

*Analysis*

Brady argues the trial court erred by giving Instruction No. 9 alleging it gave the jury a

roving commission and it failed to follow the substantive law of Missouri. He correctly argues

that if Instruction No. 9 granted the jury a roving commission or failed to follow substantive law

then the giving of such instruction was error. An instruction must not give the jury a "roving

commission." *Hepler v. Caruthersville Supermarket Co.*, 102 S.W.3d 564, 568 (Mo. App. S.D.

2003). "A roving commission occurs when an instruction assumes a disputed fact or submits an

abstract legal question that allows the jury to roam freely through the evidence and choose any

facts which suited its fancy or its perception of logic to impose liability." *Id.* (quoting *Seitz v.*

*Lemay Bank & Trust Co.*, 959 S.W.2d 458, 463 (Mo. banc 1998)) (internal quotations and

citation omitted).

> A jury instruction amounts to a "roving commission" when it fails to advise
> the jury, or point out in any way, what acts or omissions on the part of [a party], if

5

any, found by them from the evidence, would constitute liability. *Paisley v. Kansas City Pub. Serv. Co.*, 351 Mo. 468, 173 S.W.2d 33, 38 (1943); *see also Spain v. Brown*, 811 S.W.2d 417, 420-21 (Mo.App.1991); *Douglas v. Hoeh*, 595 S.W.2d 434, 438 (Mo.App.1980). A jury instruction may also be considered a roving commission when it is "too general." *Paisley*, 173 S.W.2d at 38. Where an instruction submits a question to the jury in a broad, abstract way without being limited to any issues of fact or law developed in the case, it may be considered a "roving commission." *Gillioz v. State Highway Comm'n*, 348 Mo. 211, 153 S.W.2d 18, 26 (1941).

*Lashmet v. McQueary*, 954 S.W.2d 546, 550 (Mo. App. S.D. 1997). Further, "[a]n instruction must be a correct statement of law." *Rhoden v. Missouri Delta Med. Ctr.*, 621 S.W.3d 469, 480 (Mo. banc 2021) (quoting *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 857 (Mo. banc 2018)). A jury instruction should only be given if it accurately follows the substantive law. *Id.*; *Koon v. Walden*, 539 S.W.3d 752, 769-70 (Mo. App. E.D. 2017) (instruction for punitive damages in a negligence cause of action must follow the substantive statutory law).

However, this Court need not address the merits of Brady's arguments to resolve this appeal. Even if the giving of Instruction No. 9 was in error, Brady cannot and did not demonstrate that any such error resulted in prejudice to Brady. Missouri law is clear: "A jury verdict which assesses no fault to the defendant negates any claim of prejudice to the plaintiff in the giving of an erroneous comparative fault instruction." *Green v. United Exp.*, 969 S.W.2d 825, 827 (Mo. App. E.D. 1998) (holding that "[a]bsent a finding in favor of the plaintiff, the jury would not reach the issue of comparative fault"); *see also Lee v. Mirbaha*, 722 S.W.2d 80, 83 (Mo. banc 1986) ("The lack of prejudice is found by the fact that the jury returned a general verdict for the defendants.").

The Missouri Supreme Court has emphatically stated that, where a plaintiff's verdict directing instruction requires a jury to assess a percentage of fault to the defendant if the jury believes certain factual propositions and the jury assesses no fault to the defendant, the jury verdict assessing no fault to the defendant negates any claim of prejudice to plaintiff in the giving of a comparative fault instruction, even if the instruction was erroneous. *Wilson v. Shanks*, 785

6

S.W.2d 282, 285 (Mo. banc 1990); *Lee v. Mirbaha*, 722 S.W.2d 80, 82-84 (Mo. banc 1986); and *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518, 520-22 (Mo. banc 1986). As the *Wilson* court explained:

> [W]e must assume the jury followed the instructions. Instruction No. 8 required some assessment of fault to defendant if the jury found the facts hypothesized to be true. The assessment of fault was not dependent upon and made no reference to Instruction No. 10. The jury necessarily must have concluded that one of the essential propositions was not established when it failed to assess any fault to defendant. Absent some assessment of fault to defendant, there was no prejudice in giving the contributory fault instruction.

785 S.W.2d at 285.

> All three districts of the Court of Appeals have followed the Missouri Supreme Court's directions without exception. *See Rouse v. Cuvelier*, 363 S.W.3d 406, 413 (Mo. App. W.D. 2012) ("'Any error in submitting a comparative fault instruction is harmless when the jury returns a verdict attributing one hundred percent fault to the complaining party.'"); *Marion v. Marcus*, 199 S.W.3d 887, 896 (Mo. App. W.D. 2006) (Because the jury returned a verdict in favor of defendants, "'the jury was never required to reach the question of apportionment of fault.' Therefore, although the instruction contained an error, the jury never needed to consider the erroneous instruction. The error resulted in no prejudice."); *Powderly v. S. Cty. Anesthesia Assocs., Ltd.*, 245 S.W.3d 267, 279 (Mo. App. E.D. 2008) ("The absence of any assessment of fault to Defendants negates any claim of prejudice to Plaintiffs in giving the erroneous comparative fault instruction."); and *Skinner v. Leggett & Platt, Inc.*, 325 S.W.3d 520, 525 (Mo. App. S.D. 2010)[] ("[T]he verdict in this case, finding zero fault in Respondent, negates any allegation of error in giving a comparative fault instruction.").

*Savage v. Kansas City Power & Light Co.*, 515 S.W.3d 778, 783-84 (Mo. App. W.D. 2017)

(footnote omitted).

Here, the jury returned its verdict assessing zero percent fault to the City. Instruction No. 9 did not prejudice Brady, in that it did not materially affect the merits of Brady's cause of action. *Id.* The jury must have necessarily concluded that Brady failed to meet his burden of proof and establish at least one of the propositions in the verdict director necessary to return a verdict in his favor. Therefore, the jury was never required to reach comparative fault. *Lee*, 722 S.W.2d at 84. Had Instruction No. 9 not been given, the jury would have simply returned a

7

verdict in favor of the City. "Absent a finding in favor of [Brady], the jury would not reach the issue of comparative fault." *Green*, 969 S.W.2d at 827. The verdict director was independent of, and made no reference to, the comparative fault instruction. *Savage*, 515 S.W.3d at 785. This Court assumes the jury read and followed all of the instructions. The jury expressly wrote "0"% fault to the City on the verdict form. The absence of any assessment of fault to the City negates any prejudice to Brady by the trial court giving Instruction No. 9.

The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS